# STATE OF CONNECTICUT *v.* DOUGLAS C., JR.*
## (SC 20456)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Ecker and Keller, Js.

*Syllabus*

A criminal information is duplicitous when it charges a defendant in a single
count with two or more distinct and separate criminal offenses, thereby
implicating the defendant's constitutional right to a unanimous jury
verdict.

Convicted of five counts of the crime of risk of injury to a child in connection
with the sexual abuse of five victims, including N, S, and T, the defendant
appealed to the Appellate Court. The defendant allegedly had sexual
and indecent contact with the intimate parts of the victims, all of whom
were under sixteen years of age at the time, on multiple occasions over
the course of several years, while at the defendant's home. Each of the
five risk of injury counts pertained to a different child. At the defendant's
trial, N and T testified regarding the defendant's frequent touching of
their breasts, and S testified about a single evening during which the

---

* In accordance with our policy of protecting the privacy interests of
victims of the crime of risk of injury to a child, we decline to use the
defendant's full name or to identify the victims or others through whom
the victims' identities may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3)
(2018), as amended by the Violence Against Women Act Reauthorization
Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to
identify any person protected or sought to be protected under a protection
order, protective order, or a restraining order that was issued or applied
for, or others through whom that person's identity may be ascertained.

State *v.* Douglas C.

defendant touched her vagina multiple times and made contact with her breasts. During the defendant's trial, defense counsel requested that the court provide a specific unanimity jury instruction on each of the risk of injury counts, claiming that the evidence demonstrated that there were discrete incidents of abuse and not a continuing course of conduct, which could cause the jurors to reach a guilty verdict on a particular count on the basis of findings as to different incidents of abuse. The trial court nevertheless denied the request for a unanimity instruction with respect to the counts pertaining to N, S, and T. On appeal to the Appellate Court from the judgment of conviction, the defendant claimed, inter alia, that the risk of injury counts pertaining to N, S, and T were duplicitous insofar as each count charged him with a single violation of the risk of injury to a child statute (§ 53-21 (a) (2)), even though there was evidence that he had engaged in multiple, separate instances of unlawful conduct, and that the trial court, therefore, improperly had declined defense counsel's request for a specific unanimity instruction as to those counts, in violation of his right to a unanimous jury verdict on each count. The Appellate Court affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Held*:

1. This court's review of federal case law concerning the scope of the unanimity requirement led it to clarify that a duplicitous information may raise two distinct and separate kinds of unanimity issues, that is, unanimity as to the elements of a crime and unanimity as to instances of conduct, the defendant's claims in the present case related to unanimity as to instances of conduct, and this court adopted the approach utilized by a majority of the federal courts of appeals for determining whether a criminal information gives rise to unanimity claims based on instances of unlawful conduct:

   The issue of unanimity as to the elements of a crime arises when a defendant is charged in a single count with having violated multiple statutory provisions, subsections, or clauses, and, when such an issue is presented, a court must determine whether the statutory language creates multiple elements, each of which the government must charge as a separate offense, or alternative means of committing the element at issue.

   The issue of unanimity as to instances of conduct arises when a defendant is charged in a single count with having violated a single statutory provision, subsection, or clause on multiple, separate occasions, and the dispute centers on whether, in light of the statutory language, the defendant could be convicted of a single count of violating a statute based on evidence of multiple, separate occurrences of the prohibited act or acts.

State *v.* Douglas C.

In the present case, the defendant claimed that the counts of the information pertaining to N, S, and T violated his right to unanimity as to instances of conduct, insofar as each count was premised on multiple, separate instances of conduct and the trial court had declined to provide a specific unanimity instruction as to those counts.

This court adopted the following multipart test, employed by federal courts, for claims of unanimity as to instances of conduct, to determine whether a defendant's constitutional right to jury unanimity was violated by the trial court's failure to give a specific unanimity instruction.

First, considering the allegations in the information and the evidence admitted at trial, does a single count charge the defendant with violating a single statute in multiple, separate instances?

Second, if so, does each instance of conduct establish a separate violation of the statute? If the statute contemplates criminalizing a continuing course of conduct, then each instance of conduct is not a separate violation of the statute but a single, continuing violation. To determine whether the statute contemplates criminalizing a continuing course of conduct, well established principles of statutory interpretation should be employed. Only if each instance of conduct constitutes a separate violation of the statute is a count duplicitous.

Third, if the count is duplicitous, was the duplicity cured by a bill of particulars or a specific unanimity instruction? If yes, then there is no unanimity issue. If not, then a duplicitous count violates a defendant's right to jury unanimity but reversal of the defendant's conviction is required only if the defendant establishes prejudice.

In light of this court's adoption of the foregoing test for claims of unanimity as to instances of conduct, to the extent that this court and the Appellate Court in previous cases have failed to heed the relevant federal precedent and to distinguish between unanimity as to the elements of a crime and unanimity as to instances of conduct, this court overruled those prior cases.

2. Applying the newly adopted test for unanimity as to instances of conduct, this court concluded that the counts of the information pertaining to N, S, and T were not duplicitous and that the trial court's failure to grant defense counsel's request for a specific unanimity instruction as to those counts, therefore, did not violate the defendant's constitutional right to jury unanimity, and, accordingly, affirmed the Appellate Court's judgment:

a. The counts of risk of injury to a child pertaining to N and T, which were based on similar testimony about the defendant's touching of N's and T's intimate parts, were not duplicitous:

State *v.* Douglas C.

Under the first prong of the multipart test, this court concluded that the counts pertaining to N and T were premised on multiple, separate incidents of conduct and not a single incident, insofar as there was testimony that the defendant frequently touched N's and T's breasts in a sexual and indecent manner during N's weekly visits to the defendant's residence and whenever T was at the residence.

Under the second prong, regarding whether each incident could establish an independent violation of § 53-21 (a) (2), this court concluded that the state had the discretion to charge the defendant with having violated § 53-21 (a) (2) as to each incident of conduct or to present those incidents to the jury as a continuing course of conduct, because, although the plain language of the statute was ambiguous as to whether the multiple, separate instances of conduct at issue were separate and distinct violations of § 53-21 (a) (2), nothing in that statute's legislative history suggested that the legislature intended to abrogate this court's prior case law interpreting § 53-21 to allow a defendant to be charged under a continuing course of conduct theory.

Moreover, not only does § 53-21 (a) (2) contemplate criminalizing a continuing course of conduct, but, in the present case, the state charged the defendant under such a theory, alleging in the counts pertaining to N and T that the defendant had contact with their intimate parts in a sexual and indecent manner over a period of time, rather than charging the defendant with a single instance of contact as to each child on a single date, and the jury reasonably could have found that the multiple, separate incidents of conduct constituted a continuing course of conduct on the basis of the evidence presented at trial, especially the testimony of N, T, and the other victims.

b. The count of risk of injury to a child pertaining to S, which was premised on multiple acts of sexual and indecent contact with S's vagina and breasts during a single evening, was not duplicitous:

Although it may be difficult to determine whether a single count is premised on multiple acts, each of which is committed in the course of a single criminal episode of relatively brief, temporal duration, and thus constitutes alternative means of committing the elements at issue, or whether the count is premised on multiple, separate and distinct acts, each of which could constitute a separate statutory violation, in the present case, the jury reasonably could have interpreted the evidence as demonstrating that the defendant's acts toward S constituted either a single criminal episode of relatively brief, temporal duration or a continuing course of conduct in that the acts occurred multiple times during a single evening, involved a single victim and furthered a single, continuing objective to touch S in a sexual and indecent manner.

(*Two justices concurring separately*)

Argued November 15, 2021—officially released December 13, 2022**

** December 13, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

State *v.* Douglas C.

*Procedural History*

Substitute information charging the defendant with five counts of the crime of risk of injury to a child and one count of the crime of sexual assault in the second degree, brought to the Superior Court in the judicial district of New London and tried to the jury before *Jongbloed, J.*; thereafter, the court granted the defendant's motion for a judgment of acquittal as to the charge of sexual assault in the second degree; verdict and judgment of guilty of five counts of risk of injury to a child, from which the defendant appealed to the Appellate Court, *Alvord, Prescott* and *Sullivan, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Dina S. Fisher*, assigned counsel, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, former state's attorney, and *Theresa Ferryman*, senior assistant state's attorney, for the appellee (state).

*Opinion*

D'AURIA, J. It is well established that a criminal information is duplicitous[1] when it charges the defendant in a single count with two or more distinct and separate criminal offenses, thereby implicating the defendant's constitutional right to jury unanimity. What is not clear, and what we must decide in this certified appeal, is whether a defendant charged in a single count with a

[1] We note that the word "duplicitous" has a unique legal definition that differs from its common dictionary definition. Compare Black's Law Dictionary (11th Ed. 2019) p. 635 ("alleging two or more matters in one plea"; and "characterized by double pleading"), with Merriam-Webster's Collegiate Dictionary (11th Ed. 2014) p. 387 (defining "duplicitous" as "marked by duplicity" and "deceptive in words or action").

State *v.* Douglas C.

single statutory violation faces a duplicitous information when the evidence at trial supports multiple, separate incidents of conduct, each of which could independently establish a violation of the charged statute. We conclude as a matter of federal law that such a count is duplicitous and, if not cured by a bill of particulars or a specific unanimity instruction, violates the defendant's constitutional right to jury unanimity, thereby requiring reversal of the defendant's conviction if this duplicity creates the risk that the conviction will result from different jurors concluding that the defendant committed different criminal acts.

The defendant, Douglas C., Jr., appeals from the Appellate Court's judgment upholding his conviction, after a jury trial, of five counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[2] The defendant claims that counts one, five, and six were duplicitous because each count charged him with a single violation of § 53-21 (a) (2), despite evidence at trial of multiple, separate incidents of conduct. As a result, he argues that the trial court improperly declined to give the jury a specific unanimity instruction as to these counts. We disagree and, accordingly, affirm the judgment of the Appellate Court.

The jury reasonably could have found the following facts. The defendant had sexual and indecent contact with the intimate parts of five female children—N, C, O, S and T—on various dates while they were under the age of sixteen. *State* v. *Douglas C.*, 195 Conn. App. 728, 731, 227 A.3d 532 (2020). The five children would often be in the defendant's presence at the numerous

_____

[2] Although § 53-21 has been amended numerous times since the defendant's commission of the crimes that formed the basis of his conviction; see, e.g., Public Acts 2015, No. 15-205, § 11; Public Acts 2013, No. 13-297, § 1; and Public Acts 2007, No. 07-143, § 4; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 53-21.

State *v.* Douglas C.

gatherings he had at his home in Lisbon. Id. At these gatherings, the defendant would serve them alcohol, although they were under the legal age to consume alcoholic beverages. Id., 731–32. The children also would be in the defendant's presence when babysitting his own children at his home or on other occasions. Id. When the defendant was in the company of the children, he had contact with their intimate parts on multiple occasions. Id.

Relevant to this appeal, on multiple occasions between 2005 and January 8, 2007, the defendant touched N's breasts. This occurred with frequency when N was at the defendant's residence, which occurred every weekend for years. Because of the frequency of this contact, N could not recall specific dates or incidents, with the exception of the first time the defendant ever touched her breasts—in a car after getting fast food—and the one and only time that the defendant touched her vagina—when he performed oral sex on her—although she could not recall the dates with any specificity. Additionally, during a single evening on a date between 2005 and September 15, 2008, the defendant touched S's vagina multiple times and made contact with her breasts. Specifically, after the defendant provided her with alcohol, S was running up and down a hill in the defendant's backyard. She fell twice, and, each time, as the defendant helped S to her feet, he touched her intimate parts—the first time he helped her up, he touched her vagina, and the second time he helped her up, he grabbed her breasts. After the defendant's wife called S and the defendant to come inside, the defendant provided S with more alcohol and sent her to bed. A few minutes later, the defendant entered the room where S was sleeping, lied down in bed with her, and touched her vagina twice. Finally, on multiple occasions between 2005 through October 23, 2007, the defendant touched T's breasts. This occurred

State *v.* Douglas C.

with such regularity that T could not recall specific dates or incidents, with the exception of one specific incident. Specifically, she was present when the defendant performed oral sex on N, and, during this incident, the defendant touched her breasts, but she could not recall the date of that incident.

The five minor victims did not disclose the defendant's inappropriate contact with their intimate parts until years later. The defendant subsequently was arrested and charged with five separate counts of risk of injury to a child in violation of § 53-21 (a) (2), with each count involving a different child. In addition, he was charged with one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (3), in relation to N, but the trial court granted the defendant's motion for a judgment of acquittal as to this count.[3]

---

[3] The defendant was charged with five counts of risk of injury to a child, with each count pertaining to each different child. Specifically, count one charged the defendant with violating § 53-21 (a) (2) as to N. Count three charged the defendant with violating § 53-21 (a) (2) as to C. Count four charged the defendant with violating § 53-21 (a) (2) as to O. Count five charged the defendant with violating § 53-21 (a) (2) as to S. Count six charged the defendant with violating § 53-21 (a) (2) as to T.

Counts one, five, and six charged the defendant with having violated a single statutory subdivision: subdivision (2) of subsection (a) of § 53-21. Specifically, as to count one, the information charged that, at the defendant's residence in Lisbon, "in or about 2005 through January 8, 2007, the said [defendant] did commit the crime of injury or risk of injury to or impairing the morals of a child in that he had contact with the intimate parts of a child under the age of sixteen years, the minor female [N], in a sexual and indecent manner likely to impair the health and morals of said child, in violation of § 53-21 (a) (2) of the . . . General Statutes."

Similarly, as to count five, the information charged that, at the defendant's residence in Lisbon, "in or about 2005 through September 15, 2008, the said [defendant] did commit the crime of injury or risk of injury to or impairing the morals of a child in that he had contact with the intimate parts of a child under the age of sixteen years, the minor female [S], in a sexual and indecent manner likely to impair the health and morals of said child, in violation of § 53-21 (a) (2) of the . . . General Statutes."

As to count six, the information charged that, at the defendant's residence in Lisbon, "in or about 2005 through October 23, 2007, the said [defendant]

State *v.* Douglas C.

At trial, the state offered the testimony of N, S and T, as detailed previously, to establish that, on multiple occasions, the defendant had contact with their intimate parts. As a result, defense counsel requested that the court provide a specific unanimity instruction to the jury on counts one, three, four, five, and six. He argued that the evidence showed there were discrete incidents, not a continuing course of conduct, and thus "the danger that arises if the jury isn't instructed that [it has] to be unanimous on at least one of those events for each of the complainants with respect to each count is that we could imagine, easily imagine, a situation in which a certain number of jurors may believe beyond a reasonable doubt that, you know, one of those described events happened, and other jurors may not believe that that particular event happened, whereas another set of jurors may believe that a second event, as described by the complaining witnesses, happened beyond a reasonable doubt but doesn't agree with the first, you know, three jurors as to one of the other events." The prosecutor agreed that a specific unanimity instruction should be given as to count four, which charged the defendant with both having had contact with the intimate parts of O and subjecting O to contact with his intimate parts but objected to the court's giving a specific unanimity instruction on the other counts because there was testimony that "this happened all the time," every time the five children saw the defendant. The court agreed that it would provide a specific

did commit the crime of injury or risk of injury to or impairing the morals of a child in that he had contact with the intimate parts of a child under the age of sixteen years, the minor female [T], in a sexual and indecent manner likely to impair the morals of said child, in violation of § 53-21 (a) (2) of the . . . General Statutes."

On appeal, the defendant challenges the judgment of conviction only as to counts one, five, and six. He concedes that, because his request for a specific unanimity instruction as to count four was granted, he has no claim as to that count. Additionally, in his reply brief, he concedes that he has no claim as to count three.

State *v.* Douglas C.

unanimity instruction as to count four but not as to the other counts because they did not involve multiple statutory subsections.

During closing argument, regarding multiple incidents of the defendant's having touched each child's intimate parts, the prosecutor argued that, "[b]ecause of the nature of the allegations here—the state is permitted to charge in this fashion—it is impossible for the state, the state contends, to prove individual episodes through the course of this period of time—so that, if you were to consider the evidence and decide that an incident of sexual contact occurred within this time period, and you're convinced beyond a reasonable doubt that at least one episode occurred, you would find the defendant guilty. . . . This is not a case that involves an episode that happened one evening with crime tape around it. It's about a period of time in which the defendant had access to these young women and in which he had sexual contact with them. That's the state's contention." More specifically, the prosecutor argued that the children had testified that this touching occurred regularly any time they were with the defendant.

In response, defense counsel, in closing, argued that the children had fabricated their testimony and focused also on whether there was reasonable doubt that the children were under the age of sixteen at the time of the alleged incidents, as required by § 53-21 (a) (2). In rebuttal, the prosecutor again emphasized that this conduct did not occur on a single occasion but that the defendant continuously engaged in this inappropriate touching "weekend after weekend . . . ."

When instructing the jury, the trial court included only a general unanimity charge.[4] The jury returned a

[4] The trial court instructed the jury: "As to each count, if you unanimously find that the state has proved beyond a reasonable doubt each of the elements of the crime of risk of injury to a minor, then you shall find the defendant guilty. On the other hand, if you unanimously find that the state has failed to prove beyond a reasonable doubt any of the elements, you shall then

State *v.* Douglas C.

guilty verdict on counts one, three, four, five, and six. The court imposed a total effective sentence of eighteen years of incarceration, execution suspended after ten years, followed by ten years of probation.

The defendant appealed to the Appellate Court, claiming that he was deprived of his constitutional right to a unanimous jury verdict because the trial court improperly denied his request for a specific unanimity instruction as to counts one, three, five, and six.[5] *State* v. *Douglas C.*, supra, 195 Conn. App. 745. Addressing this claim, the Appellate Court held that, under governing case law from this state, a specific unanimity instruction was not required because unanimity concerns arise only when the state charges the defendant in a single count with having violated multiple statutes, statutory subsections, or statutory clauses. Id., 752. The Appellate Court stated that unanimity issues do not arise when a defendant is charged in a single count with violating a single statute, statutory subsection, or statutory clause on multiple occasions. Id., 754. As a result, the Appellate Court held that, because the state charged the defendant under each count with having violated only a single statutory subsection, the defendant's right to jury unanimity was not violated. The defendant sought certification to appeal to this court, which we granted.

The defendant claims that counts one, five, and six were duplicitous because each count charged him with a single violation of § 53-21 (a) (2) but that there was evidence presented of multiple, distinct acts. According

find the defendant not guilty. . . . When you reach a verdict, it must be unanimous."

[5] The defendant also stated in his brief to the Appellate Court that his right to a unanimous jury verdict was protected under article first, § 8, of the Connecticut constitution, but he failed to analyze this claim separately under the state constitution, and thus the Appellate Court did not address the state constitutional claim. On appeal to this court, the defendant has not raised a separate state constitutional claim.

State *v.* Douglas C.

to the defendant, because the counts at issue were premised on these multiple acts, only the conceptual distinction portion of the test for unanimity announced in *State* v. *Famiglietti*, 219 Conn. 605, 619–20, 595 A.2d 306 (1991), which followed the test detailed in *United States* v. *Gipson*, 553 F.2d 453 (5th Cir. 1977), applies to his claim.[6] Under this modified version of the *Gipson* test, the defendant argues, counts one, five, and six are duplicitous. Although we agree with the defendant that claims of unanimity as to multiple, separate instances of conduct, which the defendant refers to as multiple acts, are analyzed under a different test than claims of unanimity as to elements, we disagree with both the test he urges this court to apply and the outcome under the proper test.

I

The defendant argues that his right to jury unanimity was violated because each risk of injury count was premised on multiple, separate incidents of criminal conduct. In making this argument, he asserts that a different standard applies to his claim than to unanimity claims that involve a single count alleging the violation of multiple statutes or statutory subsections. We thus begin by determining whether there are different kinds of unanimity claims and, if so, the legal test applicable to the defendant's unanimity claim. We conclude that there are two distinct kinds of unanimity claims—una-

_____

[6] We have described the *Gipson* test as follows: "We first review the instruction that was given to determine whether the trial court has sanctioned a nonunanimous verdict. If such an instruction has not been given, that ends the matter. Even if the instructions at trial can be read to have sanctioned such a nonunanimous verdict, however, we will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts with which the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant has been charged." (Internal quotation marks omitted.) *State* v. *Reddick*, 224 Conn. 445, 453, 619 A.2d 453 (1993).

State *v.* Douglas C.

nimity as to elements and unanimity as to instances of conduct—and that different tests apply to these claims.

In determining the proper test for analyzing the defendant's claim, it is useful to begin with a review of the definition of a "duplicitous" count and the principles underpinning the federal right to a unanimous jury verdict. From there, we synthesize the case law from the federal courts of appeals, which recognizes that duplicitous indictments may implicate unanimity principles in two distinct ways: unanimity as to elements and unanimity as to instances of conduct. Because of the unique nature of these two unanimity issues, federal courts have applied different tests to these distinct circumstances to determine whether a defendant's right to jury unanimity has been violated. Until today, courts of this state have not recognized this distinction. We now conform our case law to this well established federal jurisprudence.

A

"Duplicity occurs when two or more offenses are charged in a single count of the accusatory instrument. . . . [A] single count is not duplicitous merely because it contains several allegations that could have been stated as separate offenses. . . . Rather, such a count is . . . duplicitous [only when] the policy considerations underlying the doctrine are implicated. . . . These [considerations] include avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution." (Citations omitted; internal quotation marks omitted.) *State* v. *Saraceno*, 15 Conn. App. 222,

State *v.* Douglas C.

228–29, 545 A.2d 1116, cert. denied, 209 Conn. 823, 552
A.2d 431 (1988), and cert. denied, 209 Conn. 824, 552
A.2d 432 (1988); see also *United States* v. *Jaynes*, 75
F.3d 1493, 1502 n.7 (10th Cir. 1996); *United States* v.
*Browning*, *Inc.*, 572 F.2d 720, 725 (10th Cir.), cert.
denied, 439 U.S. 822, 99 S. Ct. 88, 58 L. Ed. 2d 114 (1978).
In the present case, the defendant argues only that the
allegedly duplicitous counts implicate his right to a
unanimous jury verdict. A duplicitous information, how-
ever, may be cured either by a bill of particulars or a
specific unanimity instruction. See, e.g., *State* v. *Conley*,
31 Conn. App. 548, 558, 627 A.2d 436 (when count of
information is duplicitous, "defendant's recourse is to
file a motion for a bill of particulars"), cert. denied, 227
Conn. 907, 632 A.2d 696 (1993); *State* v. *Markham*, 12
Conn. App. 306, 311, 530 A.2d 660 (1987) (same); see
also *United States* v. *Newson*, 534 Fed. Appx. 604, 604–
605 (9th Cir. 2013) (specific unanimity instruction can
cure juror confusion as to which crime defendant is
alleged to have committed); *United States* v. *White*, 766
F. Supp. 873, 893 (E.D. Wn. 1991) (bill of particulars
rendered moot defendant's claim that count of indict-
ment was duplicitous). Only in the absence of such
remedies does a duplicitous count violate a defendant's
right to jury unanimity.[7] See part I B of this opinion.
The defendant argues that, because the information was
duplicitous, the trial court erroneously denied his request
for both a bill of particulars and a specific unanimity

---

[7] The concurrence is correct that the issues of duplicity and unanimity
are "different—albeit related—matters. The cure for a violation of the rules
against duplicitous pleading is, typically, reformulation of the indictment,
a bill of particulars, and/or appropriate jury instructions, not reversal of the
conviction." (Footnote omitted.) In the present case, the issue of duplicity
was raised and evaluated at the pretrial phase of the criminal proceedings.
The trial court, however, declined to cure any alleged duplicity. This court
must now determine whether the counts were duplicitous and thus violated
the defendant's right to jury unanimity, posttrial, based on all the evidence
admitted at trial. See *United States* v. *Correa-Ventura*, 6 F.3d 1070, 1086–87
(5th Cir. 1993).

State *v.* Douglas C.

instruction and that this error resulted in a verdict that violated his right to jury unanimity. Although we generally review the denial of a motion for a bill of particulars for abuse of discretion; see, e.g., *State* v. *Vumback*, 263 Conn. 215, 221, 819 A.2d 250 (2003); because this claim is premised on an alleged infringement of the defendant's constitutional rights, our review is plenary. See, e.g., *State* v. *Jodi D.*, 340 Conn. 463, 476, 264 A.3d 509 (2021) (constitutional issue presents legal question subject to de novo review); see also *United States* v. *Newell*, 658 F.3d 1, 20 (1st Cir.), cert. denied, 565 U.S. 955, 132 S. Ct. 430, 181 L. Ed. 2d 280 (2011), and cert. denied sub nom. *Parisi* v. *United States*, 565 U.S. 1137, 132 S. Ct. 1069, 181 L. Ed. 2d 783 (2012).

The United States Supreme Court recently detailed the history of the federal constitutional right to jury unanimity: "The [s]ixth [a]mendment promises that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the [s]tate and district wherein the crime shall have been committed, which district shall have been previously ascertained by law.' The [a]mendment goes on to preserve other rights for criminal defendants but says nothing else about what a 'trial by an impartial jury' entails." *Ramos* v. *Louisiana*, U.S. , 140 S. Ct. 1390, 1395, 206 L. Ed. 2d 583 (2020). Although the sixth amendment says nothing about the need for a unanimous verdict, the court has noted that "[t]he text and structure of the [c]onstitution clearly suggest that the term 'trial by an impartial jury' carried with it some meaning about the content and requirements of a jury trial." (Emphasis omitted.) Id. "One of these requirements was unanimity. Wherever we might look to determine what the term 'trial by an impartial jury trial' meant at the time of the [s]ixth [a]mendment's adoption— whether it's the common law, state practices in the founding era, or opinions and treatises written soon

State *v.* Douglas C.

afterward—the answer is unmistakable. A jury must reach a unanimous verdict in order to convict.'' Id.[8]

This constitutional requirement has come to apply equally to state and federal criminal trials. See id., 1397. Specifically, in *Duncan* v. *Louisiana*, 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968), the United States Supreme Court held that the right to a trial by jury guaranteed by the sixth amendment applies to ''serious criminal cases'' tried in state court.[9] Id., 156. Subsequently, in *Burch* v. *Louisiana*, 441 U.S. 130, 99 S. Ct. 1623, 60 L. Ed. 2d 96 (1979), the court held that the sixth amendment requires a six person jury in state court to be unanimous before finding a defendant guilty of a ''nonpetty offense . . . .'' Id., 134. Most recently, in *Ramos*, the court clarified that the sixth amendment requires a jury in a state court to be unanimous before finding a criminal defendant guilty of a ''serious offense.''[10] *Ramos* v. *Louisiana*, supra, 140 S. Ct. 1394;

---

[8] ''The requirement of juror unanimity emerged in [fourteenth] century England and was soon accepted as a vital right protected by the common law. . . . This [c]ourt has, repeatedly and over many years, recognized that the [s]ixth [a]mendment requires unanimity. As early as 1898, the [c]ourt said that a defendant enjoys a 'constitutional right to demand that his liberty should not be taken from him except by the joint action of the court and the unanimous verdict of a jury of twelve persons.' A few decades later, the [c]ourt elaborated that the [s]ixth [a]mendment affords a right to 'a trial by jury as understood and applied at common law . . . includ[ing] all the essential elements as they were recognized in this country and England when the [c]onstitution was adopted.' And, the [c]ourt observed, this includes a requirement 'that the verdict should be unanimous.' '' (Footnotes omitted.) *Ramos* v. *Louisiana*, supra, 140 S. Ct. 1395–97.

[9] In *Apodaca* v. *Oregon*, 406 U.S. 404, 411, 92 S. Ct. 1628, 32 L. Ed. 2d 184 (1972), however, the court upheld criminal convictions under Oregon law that required the agreement of only ten members of a twelve person jury in certain noncapital cases. The court explicitly had acknowledged in *Ramos* that its decision in *Apodaca* was mistaken. See *Ramos* v. *Louisiana*, supra, 140 S. Ct. 1405; see also id., 1410 (Sotomayor, J., concurring as to all but part IV A); id., 1416 (Kavanaugh, J., concurring in part).

[10] We note that, although the United States Supreme Court has classified the right to unanimity as a sixth amendment right, there has been some confusion regarding whether the right to jury consensus as to a defendant's course of action is protected under the sixth amendment or under the

State *v.* Douglas C.

see *Edwards* v. *Vannoy*, U.S , 141 S. Ct. 1547, 1551, 209 L. Ed. 2d 651 (2021). Although there has been a good deal of litigation involving what constitutes a "serious criminal case," a "nonpetty offense" and a "serious offense," it is not disputed that this case qualifies and that the right to jury unanimity applies.

due process clauses of the fifth and fourteenth amendments. See *Schad* v. *Arizona*, 501 U.S. 624, 634 n.5, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991) (opinion announcing judgment). Prior to *Ramos*, the defendant in *Schad* claimed that Arizona's first degree murder statute violated his sixth amendment right to jury unanimity because it did not require the jurors to be unanimous as to one of the alternative theories of premeditated and felony murder. Id., 630 (opinion announcing judgment). The court in *Schad*, however, reframed the defendant's claim as a due process challenge, explaining: "Even assuming a requirement of jury unanimity arguendo, that assumption would fail to address the issue of what the jury must be unanimous about. [The] jury was unanimous in deciding that the [s]tate had proved what, under state law, it had to prove: that [the defendant] murdered either with premeditation or in the course of committing a robbery. The question still remains whether it was constitutionally acceptable to permit the jurors to reach one verdict based on any combination of the alternative findings. . . . In other words, [the defendant's] real challenge is to Arizona's characterization of [first degree] murder as a single crime as to which a verdict need not be limited to any one statutory alternative, as against which he argues that premeditated murder and felony murder are separate crimes as to which the jury must return separate verdicts." Id., 630–31 (opinion announcing judgment). The court noted, however, that characterizing the right at issue as a sixth amendment right or as a due process right was "immaterial to the problem of how to go about deciding what level of verdict specificity is constitutionally necessary." Id., 634 n.5 (opinion announcing judgment).

The United States Court of Appeals for the Third Circuit, however, has reconciled the confusion in the case law in a way we find persuasive: "[R]ead as a whole, we think that [*Schad*'s] emphasis on the [d]ue [p]rocess [c]lause does not mean that the [s]ixth [a]mendment is irrelevant here. Rather, we conclude that the [s]ixth [a]mendment does require unanimity, in federal [and state] criminal trials, on all elements of the offense. However, because what constitutes an 'element' is purely a matter of legislative intent, the [s]ixth [a]mendment places no limit on the legislature's power to make alternative facts 'means' not subject to a unanimity requirement. The limit on the legislature's definitional power, then, comes from the [d]ue [p]rocess [c]lause. . . . As [*Schad*] pointed out, 'this difference in characterization . . . is immaterial to the problem of how to go about deciding what level of verdict specificity is constitutionally necessary.' " *United States* v. *Edmonds*, 80 F.3d 810, 823 n.17 (3d Cir.), cert. denied, 519 U.S. 927, 117 S. Ct. 295, 136 L. Ed. 2d 214 (1996).

State *v.* Douglas C.

B

Although the federal constitutional right to jury unanimity clearly applies in both state and federal courts, what is less clear is precisely *what* the jury must be unanimous about. Detailing the scope of the unanimity requirement, the United States Supreme Court has explained that a jury "cannot convict unless it unanimously finds that the [g]overnment has proved each element" of the offense charged. *Richardson* v. *United States*, 526 U.S. 813, 817, 119 S. Ct. 1707, 143 L. Ed. 2d 985 (1999). Nevertheless, the court has recognized that "different jurors may be persuaded by different pieces of evidence, even when they agree [on] the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues [that] underlie the verdict." (Internal quotation marks omitted.) *Schad* v. *Arizona*, 501 U.S. 624, 631–32, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991) (opinion announcing judgment). In other words, a jury must agree "on the principal facts underlying its verdict—what courts have tended to call the elements of the offense. But that requirement does not extend to subsidiary facts—what the [Supreme] Court has called 'brute facts.' " *United States* v. *Lee*, 317 F.3d 26, 36 (1st Cir.), cert. denied, 538 U.S. 1048, 123 S. Ct. 2112, 155 L. Ed. 2d 1089 (2003). "[I]n the routine case, a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even [when] an indictment alleges numerous factual bases for criminal liability." (Internal quotation marks omitted.) *United States* v. *Holley*, 942 F.2d 916, 925–26 (5th Cir. 1991), quoting *United States* v. *Beros*, 833 F.2d 455, 460 (3d Cir. 1987).

The court has clarified that alternative means of committing a crime constitute underlying brute facts: "[F]or example, [the court has] sustained a murder conviction against the challenge that the indictment on which the verdict was returned was duplicitous in charging that

State *v.* Douglas C.

death occurred through both shooting and drowning. In holding that the [g]overnment was not required to make the charge in the alternative . . . [the court] explained that it was immaterial whether death was caused by one means or the other. . . . This fundamental proposition is [also] embodied in Federal Rule of Criminal Procedure 7 (c) (1), which provides that [i]t may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means." (Citations omitted; internal quotation marks omitted.) *Schad* v. *Arizona*, supra, 501 U.S. 631 (opinion announcing judgment).

A majority of unanimity cases involve this "crucial distinction . . . between a fact that is an element of the crime and one that is 'but the means' to the commission of an element." *United States* v. *Verrecchia*, 196 F.3d 294, 299 (1st Cir. 1999). The line between means and element may be unclear at times, and courts have divided over the appropriate test to apply to distinguish between means and elements. See *Schad* v. *Arizona*, supra, 501 U.S. 641–42 (opinion announcing judgment). Indeed, *Ramos*, *Schad* and *Richardson* all involved indictments that charged a defendant in a single count with violating multiple statutory provisions, subsections, or clauses, and thus the court had to determine whether the statutory provisions, subsections, or clauses constituted elements or alternative means. As a result, those cases raised unanimity as to elements claims— unlike the present case, which involves unanimity as to instances of conduct. Although those cases did not raise claims of unanimity as to instances of conduct, the court implicitly acknowledged that, if an indictment charged a defendant in a single count with violating a single statutory provision, subsection, or clause on multiple occasions, the jury must agree unanimously as to which instance of conduct the defendant committed.

State *v.* Douglas C.

For example, in *Schad*, the Supreme Court rejected a challenge to Arizona's first degree murder statute, which permitted conviction on a theory of either premeditation or felony murder. See id., 627 (opinion announcing judgment). In his concurrence, which was necessary to the court's judgment, Justice Scalia warned that "[w]e would not permit . . . an indictment charging that the defendant assaulted either X on Tuesday or Y on Wednesday . . . ." Id., 651 (Scalia, J., concurring in part and concurring in the judgment). Subsequently, the majority in *Richardson* specifically cited Justice Scalia's warning in *Schad* in support of the proposition that "the [c]onstitution itself limits a [s]tate's power to define crimes in ways that would permit juries to convict while disagreeing about means, at least [when] that definition risks serious unfairness and lacks support in history or tradition." *Richardson* v. *United States*, supra, 526 U.S. 820.

Relying on these admonitions, a majority of federal courts of appeals have recognized that a duplicitous indictment may raise two distinct and separate kinds of unanimity issues: (1) unanimity as to a crime's elements, which was the kind of unanimity claim raised in *Ramos*, *Schad* and *Richardson*; and (2) unanimity as to instances of conduct, also known as a multiple acts or multiple offense claim, which was the kind of claim the court implicitly acknowledged in *Schad* and *Richardson*. These courts have explained that this first kind of unanimity claim involves the question of "when is a disputed fact—e.g., whether the crime occurred on a Monday or a Tuesday, with a knife or a gun, against this or that victim—one that the jury must unanimously agree [on], and when is it merely dispensable detail [i.e., element vs. means]? And the second [involves the question]: when is a defendant's conduct one violation of a statute, and when is it many?" *United States* v. *Newell*, supra, 658 F.3d 20.

State *v.* Douglas C.

The federal courts of appeals not only have recognized that a duplicitous indictment may raise these two distinct unanimity issues, but they also have recognized that a claim of unanimity as to elements implicates different concerns than a claim of unanimity as to instances of conduct. Specifically, for claims of unanimity as to elements, unanimity concerns arise from the statutory language or scheme at issue. See *Schad* v. *Arizona*, supra, 501 U.S. 631–32 (opinion announcing judgment). The concern in those cases is whether the statutory language creates multiple elements, each of which the government must charge as a separate offense, or alternative means of committing an element. In contrast, for claims of unanimity as to instances, unanimity concerns arise from the evidence of the defendant's conduct, viewed in light of the statutory language. In the latter situation, there is no dispute over whether the defendant violated multiple subsections of a statute, each of which constitutes a separate offense; rather, the dispute is over whether the defendant may be convicted of a single count of violating a statute based on evidence of multiple, separate occurrences of the prohibited act or acts. See *United States* v. *Correa-Ventura*, 6 F.3d 1070, 1080 (5th Cir. 1993) (discussing difference between unanimity as to elements cases and unanimity as to instances cases). For example, a claim of unanimity as to instances of conduct may arise in a case in which the defendant is charged with a single count of assault but there was evidence presented to the jury that the defendant assaulted the victim three separate times on three separate dates. In such a case, the concern arises that the jury may have agreed that the defendant committed assault but may not have agreed which assault the defendant committed. Because of the distinct nature of these two unanimity claims, federal courts have applied a different test to claims of unanimity as to elements than to claims of unanimity as to instances.

State *v.* Douglas C.

In the present case, the defendant argues that counts one, five, and six were duplicitous because each was premised on multiple, separate instances of conduct, and thus the lack of a bill of particulars or a specific unanimity instruction led to a verdict that violated his right to jury unanimity. In other words, he claims that these counts violated his right to unanimity as to instances of conduct, not his right to unanimity as to elements. As we will discuss in detail, federal courts apply a multipart test to claims of unanimity as to instances of conduct to determine whether the defendant's constitutional right to jury unanimity was violated.

First, a court must determine whether a single count is premised on multiple, separate instances of conduct. If the answer is yes, then the court next must determine if each instance could establish a separate violation of the statute at issue. At times, it may be easy to make this second determination. That is because, "[i]n some cases the standard for individuating crimes is obvious— we count murders, for instance, by counting bodies. But in other cases, determining how many crimes were committed is much less clear." *United States* v. *Newell*, supra, 658 F.3d 23–24. For example, it may be difficult to determine whether a single count is premised on multiple acts, each of which is committed in the course of a single criminal episode of relatively brief, temporal duration, and thus constitutes alternative means of committing the elements at issue, or whether it is premised on multiple, separate and distinct acts, each of which could constitute a separate statutory violation. In these more difficult cases, courts have examined the statute's language, its legislative history, and case law regarding similar statutes to help determine whether the charge is duplicitous. See id.; *United States* v. *Correa-Ventura*, supra, 6 F.3d 1082.

In examining the statutory language at issue, a majority of federal courts of appeals have explained that, if

the underlying criminal statute contemplates crimi-
nalizing a continuing course of conduct and the defen-
dant has been charged with violating the statute by a
continuing course of conduct, a single count premised
on multiple, separate instances of conduct is not duplic-
itous when the multiple instances of conduct constitute
"a continuing course of conduct, during a discrete
period of time . . . ." (Internal quotation marks omit-
ted.) *United States* v. *Davis*, 471 F.3d 783, 790 (7th Cir.
2006); see also *United States* v. *O'Brien*, 953 F.3d 449,
455 (7th Cir. 2020), cert. denied,      U.S.    , 141 S.
Ct. 1128, 208 L. Ed. 2d 565 (2021); *United States* v.
*Prieto*, 812 F.3d 6, 12 (1st Cir.), cert. denied,      U.S.
   , 137 S. Ct. 127, 196 L. Ed. 2d 100 (2016); *United
States* v. *Mancuso*, 718 F.3d 780, 792 (9th Cir. 2013);
*United States* v. *Moyer*, 674 F.3d 192, 205 (3d Cir.), cert.
denied, 568 U.S. 846, 133 S. Ct. 165, 184 L. Ed. 2d 82
(2012), and cert. denied sub nom. *Nestor* v. *United
States*, 568 U.S. 1143, 133 S. Ct. 979, 184 L. Ed. 2d 760
(2013); *United States* v. *Kamalu*, 298 Fed. Appx. 251,
254 (4th Cir. 2008); *United States* v. *Wiles*, 102 F.3d
1043, 1062 (10th Cir. 1996), cert. denied, 522 U.S. 947,
118 S. Ct. 363, 139 L. Ed. 2d 283 (1997), and vacated
sub nom. *United States* v. *Schleibaum*, 522 U.S. 945,
118 S. Ct. 361, 139 L. Ed. 2d 282 (1997); *United States*
v. *Berardi*, 675 F.2d 894, 898 (7th Cir. 1982); *United
States* v. *Alsobrook*, 620 F.2d 139, 142–43 (6th Cir.), cert.
denied, 449 U.S. 843, 101 S. Ct. 124, 66 L. Ed. 2d 51
(1980).[11] To determine if a statute criminalizes only a

---

[11] Additionally, some federal courts have noted that some state courts
have relied on their own common law to hold that a statute encompasses
a continuing course of conduct. See *Dyer* v. *Farris*, 787 Fed. Appx. 485,
495 (10th Cir. 2019) (Under Oklahoma law, "the general rule requiring the
[s]tate to elect which offense it will prosecute is not in force when separate
acts are treated as one transaction. . . . [W]hen a child of tender years is
under the exclusive domination of one parent for a definite and certain
period of time and submits to sexual acts at that parent's demand, the
separate acts of abuse become one transaction within the meaning of this
rule." (Citation omitted; internal quotation marks omitted.)), cert. denied,
   U.S.    , 140 S. Ct. 1157, 206 L. Ed. 2d 207 (2020); id. (citing *Gilson* v.

State *v.* Douglas C.

single act, a continuous course of conduct, or both, courts must interpret the statute's language in the manner directed by General Statutes § 1-2z.[12] See, e.g., *State* v. *Cody M.*, 337 Conn. 92, 102–103, 259 A.3d 576 (2020); id., 106 (holding, based on interpretation of language of General Statutes § 53a-223a as required by § 1-2z, that legislature intended to criminalize each separate offense under § 53a-223a, not continuous course of conduct).[13] If a statute does criminalize a continuing course

---

*State*, 8 P.3d 883, 899 (Okla. Crim. App. 2000), cert. denied, 532 U.S. 962, 121 S. Ct. 1496, 149 L. Ed. 2d 381 (2001), which stated that, generally, under Oklahoma law, rape was not considered continuing offense, but that, under Oklahoma's common law, court had recognized exception for ongoing sexual abuse of minors under certain circumstances). Because neither party argues that any common-law exception applies, we need not decide today whether creating or applying common-law exceptions in interpreting statutes is proper.

[12] Both the majority and the concurrence agree that, whether a statute criminalizes a single act, a continuous course of conduct, or both is a matter of legislative intent and that this court's first task is to interpret the statute at issue, as directed by § 1-2z. If the statute's clear language, its relationship to other statutes, its legislative history or other extrinsic sources make the legislature's intent clear, then that controls, and the prosecutor's discretion in charging is limited, as made clear by the statute. The concurrence, however, citing to case law from the United States Court of Appeals for the Second Circuit, argues that, in the event that the legislature is silent with respect to its intent, we should adopt and apply a presumption in favor of granting prosecutors discretion to charge crimes based on either a single act or a continuous course of conduct.

We have discovered no support for such a presumption in our case law or in the case law of a majority of the federal courts of appeals. We will discuss this in greater detail in part I C of this opinion. Nevertheless, we need not decide the issue of whether any presumption should apply in the event the legislature is silent with respect to its intent regarding whether a statute criminalizes a single act, a continuous course of conduct, or both because we hold that the legislature's intent under subsection (a) (2) of our risk of injury statute is clear based on the statutory language, case law defining that statute, and relevant legislative history. See part II of this opinion.

[13] In *State* v. *Cody M.*, supra, 337 Conn. 92, the defendant argued that his two convictions under § 53a-223a for violating a standing criminal protective order twice in one transaction violated the constitutional prohibition against double jeopardy because, in his view, violating a protective order is a continuing offense, and the two statements that formed the basis of his convictions—

State *v.* Douglas C.

of conduct, then the court must determine whether the multiple instances of conduct alleged in fact constitute a continuous course of conduct by examining, among other things, whether the acts occurred within a relatively short period of time, were committed by one defendant, involved a single victim, and furthered a single, continuing objective. See, e.g., *United States* v. *O'Brien*, supra, 455; *United States* v. *Davis*, supra, 790–91; *United States* v. *Berardi*, supra, 898.

When a single count does charge the defendant with having violated a single statute in multiple, separate instances, each of which could establish a separate violation of the statute, federal courts agree that such a count is duplicitous. See, e.g., *United States* v. *Mancuso*, supra, 718 F.3d 792; *United States* v. *Moyer*, supra, 674 F.3d 204–205; *United States* v. *Kamalu*, supra, 298 Fed. Appx. 254–55; *United States* v. *Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001); *United States* v. *Schlei*, 122 F.3d 944, 979 (11th Cir. 1997), cert. denied, 523 U.S. 1077, 118 S. Ct. 1523, 140 L. Ed. 2d 674 (1998); *United States* v. *Correa-Ventura*, supra, 6 F.3d 1081–82; *United States* v. *Holley*, supra, 942 F.2d 927–29; *United States* v. *Tanner*, 471 F.2d 128, 138–39 (7th Cir.), cert. denied, 409 U.S. 949, 93 S. Ct. 269, 34 L. Ed. 2d 220 (1972).

A determination of duplicity does not end the analysis, however. Contrary to the concurrence's dire warn-

one in which he simply contacted the victim, and the other in which he threatened her—were part of a single conversation that should be viewed as a single violation. Id., 98, 101. In deciding that claim, this court analyzed the language of § 53a-223a pursuant to § 1-2z and determined that the legislature intended to criminalize each separate offense, not a continuous course of conduct. Id., 102–103, 106. We did not apply any presumption or determine that the state had discretion in deciding whether to charge the defendant with multiple single counts or a single count premised on a continuous course of conduct. Thus, we have treated the question of whether a single count may be premised on a continuous course of conduct as a matter of statutory interpretation, requiring us "in the first instance" to follow the admonition of § 1-2z. Id., 104.

State *v.* Douglas C.

ing that we are stripping prosecutors of their "traditional authority" and placing "an unwarranted burden on young victims," a duplicitous count does not necessarily violate a defendant's right to jury unanimity. As explained, a duplicitous count may be cured by a bill of particulars or a specific unanimity instruction.[14] Thus, as long as one of these remedies is given, the state may continue to charge a defendant with a single count premised on multiple, separate incidents of conduct without violating his right to jury unanimity. In the absence of one of those remedies, however, a majority of federal courts of appeals have held that a duplicitous count violates a defendant's right to jury unanimity.[15] See, e.g., *United States* v. *Newell*, supra, 658 F.3d 28 (single count premised on multiple acts was duplicitous, and thus trial court's failure to give unanimity instruction violated defendant's right to jury unanimity); *United States* v. *Fawley*, 137 F.3d 458, 471 (7th Cir. 1998) (trial court's failure to give specific unanimity instruction violated

---

[14] For claims of unanimity as to instances of conduct, even if the precise, specific unanimity instruction the defendant requested was not given, no prejudice exists if the jury is instructed that it must be unanimous either as to which instance of conduct occurred or that all of the alleged instances of conduct occurred. See, e.g., *United States* v. *Sarihifard*, 155 F.3d 301, 310 (4th Cir. 1998).

[15] The United States Court of Appeals for the Second Circuit, along with a minority of other federal courts of appeals, has held that, although a single count premised on multiple, separate acts, each of which could constitute a violation of the same statute, statutory subsection, or statutory clause is duplicitous, the defendant's right to jury unanimity is violated only if his conviction on the basis of multiple acts prejudiced the defendant by creating the genuine possibility that the conviction occurred as the result of different jurors concluding that the defendant committed different acts. See, e.g., *United States* v. *Sturdivant*, supra, 244 F.3d 75; *United States* v. *Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981). Thus, under this test, the trial court's failure to grant a defendant's request for a bill of particulars or a specific unanimity instruction to cure this duplicity does not mean that the duplicitous count necessarily violates the defendant's right to jury unanimity. A constitutional error arises only if the duplicitous count prejudices the defendant. As we will explain in part I C of this opinion, we do not adopt the Second Circuit's test for claims of unanimity as to instances of conduct.

State *v.* Douglas C.

defendant's right to jury unanimity when single count was premised on multiple, separate acts); *United States* v. *Schlei*, supra, 122 F.3d 979–80 (single count was duplicitous, and thus trial court's failure to cure with specific unanimity instruction violated defendant's right to jury unanimity); *United States* v. *Holley*, supra, 942 F.2d 928–29 (single count based on multiple, separate acts was duplicitous, and thus trial court's failure to give specific unanimity instruction violated defendant's right to jury unanimity); *United States* v. *Beros*, supra, 833 F.2d 460–63 (single count based on multiple, separate acts was duplicitous and implicated defendant's right to jury unanimity, and thus trial court's failure to give specific unanimity instruction was error and not harmless). But cf. *United States* v. *Sarihifard*, 155 F.3d 301, 310 (4th Cir. 1998) (although defendant was charged with single count of perjury premised on multiple, separate instances of conduct, right to jury unanimity was not violated because trial court gave specific unanimity instruction); *United States* v. *Alsobrook*, supra, 620 F.2d 142–43 (same).

But even then, reversal of the defendant's conviction is required only if the defendant establishes prejudice, namely, that the duplicity created the genuine possibility that the conviction resulted from different jurors concluding that the defendant committed different acts.[16] See *United States* v. *Sarihifard*, supra, 155 F.3d 310; *United States* v. *Correa-Ventura*, supra, 6 F.3d 1082; *United States* v. *Holley*, supra, 942 F.2d 926; *United States* v. *Beros*, supra, 833 F.2d 460–63. But see *United States* v. *Sturdivant*, supra, 244 F.3d 75; *United States*

---

[16] The defendant argues that a trial court's failure to give a specific unanimity instruction when a single count is premised on multiple, separate instances of conduct constitutes structural error, regardless of prejudice to the defendant. The defendant's position, however, conflicts with the test established by the federal courts of appeals for constitutional claims. Additionally, our appellate courts have never applied structural error to unanimity claims. Accordingly, we reject the defendant's argument.

State *v.* Douglas C.

v. *Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981). In such cases, courts have invoked principles of fairness in requiring a specific unanimity instruction to avoid any potential for juror confusion.[17]

In sum, to determine if a defendant was entitled to a specific unanimity charge, we apply the following three-pronged test: (1) Considering the allegations in the information and the evidence admitted at trial, does a single count charge the defendant with violating a single statute in multiple, separate instances? (2) If so, then does each instance of conduct establish a separate violation of the statute? If the statute contemplates criminalizing a continuing course of conduct, then each instance of conduct is not a separate violation of the statute but a single, continuing violation. To determine whether the statute contemplates criminalizing a continuing course of conduct, we employ our well established principles of statutory interpretation. Only if each instance of conduct constitutes a separate violation of the statute is a count duplicitous. And (3) if duplicitous, was the duplicity cured by a bill of particulars or a specific unanimity instruction? If yes, then there is no unanimity issue. If not, then a duplicitous count violates a defendant's right to jury unanimity but reversal of the defendant's conviction is required only if the defendant establishes prejudice.

---

[17] As one federal court of appeals has stated: "The risks of serious unfairness presented by a duplicitous indictment are apparent. In conditions where jurors disagree among themselves as to just which offenses the evidence supports, the defendant may nevertheless wind up convicted because the jurors agree that the evidence showed that he had committed an offense, even if it was ambiguous as to which one. . . . In other words, although a jury may return a guilty verdict even if the jurors disagree about how a specific crime was committed, this is quite different from allowing a jury to return a guilty verdict when they disagree even as to which crime or crimes were committed. . . . [T]he lack of a unanimity instruction [under these circumstances] could cover up wide disagreement among the jurors about just what the defendant did, or did not, do." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *United States* v. *Newell*, supra, 658 F.3d 27.

State *v.* Douglas C.

C

The concurrence disagrees with the test we adopt, despite the fact that it is followed by a majority of federal courts of appeals, and would instead adopt the test applied by the United States Court of Appeals for the Second Circuit. See footnotes 12 and 15 of this opinion. Specifically, the concurrence contends that the test that court applies regarding unanimity as to instances of conduct differs from, and is superior to, the test the majority of federal courts of appeals apply because, in determining whether a statute contemplates criminalizing a continuing course of conduct under the second prong of the test the majority of federal courts apply, the Second Circuit relies on a presumption in favor of prosecutorial discretion when the statute at issue is silent—meaning that, when the legislature's intent regarding whether a statute criminalizes a single act, a continuous course of conduct, or both remains ambiguous after a full analysis pursuant to § 1-2z, including an examination of the relevant legislative history, we should apply a presumption in favor of the prosecutor's having discretion to charge a defendant with a single count of the crime at issue based on either a single act or a continuous course of conduct. The concurrence argues that adopting this presumption is the better approach because of its utility in sexual assault cases.

At the outset, we must immediately correct the concurrence's erroneous suggestion that we have adopted our own presumption that silence on this issue means that a prosecutor may charge the crime only as a single act and not as a continuing course of conduct. That is not it at all. Rather, our holding in the present case that the defendant properly could be charged with having engaged in a continuous course of conduct under § 53-21 (a) (2) is not based on any presumption but, rather, on our interpretation of the statute under § 1-2z, includ-

State *v.* Douglas C.

ing our review of the statute's legislative history. See part II of this opinion. Use of a presumption is neither necessary nor warranted in the present context.

At any rate, we decline to apply the concurrence's presumption for four reasons.[18] First, as we will explain in part II of this opinion, based on the language of § 53-21 (a) (2), case law interpreting this statute, and relevant legislative history, it is clear that our legislature specifically intended to criminalize both single acts and a continuous course of conduct under subsection (a) (2) of our risk of injury statute. Contrary to the concurrence's assertion, a full and complete analysis pursuant to § 1-2z does not end in silence on this issue, thereby requiring this court to resort to any kind of presumption. What the concurrence calls silence is not silence but the absence of explicit language specifically stating that the statute criminalizes only a continuous course of

[18] In declining to adopt the test used by the Second Circuit, we assume that the concurrence accurately has recited it. In arguing that the Second Circuit has adopted this presumption, the concurrence relies on *United States* v. *Margiotta*, supra, 646 F.2d 729. Contrary to the concurrence's assertion, in holding that a duplicitous count—a single count of mail fraud based on multiple, separate acts—created no risk of a nonunanimous verdict, the court explained that this "risk [was] slight in a case . . . [in which] the essence of the alleged wrong is the single *scheme* to defraud . . . ." (Emphasis added.) Id., 733. In other words, the court relied on the language of the federal mail fraud statute, which specifically criminalizes "any scheme . . . to defraud . . . ." 18 U.S.C. § 1341 (1976). Thus, the holding in *Margiotta* was premised on the fact that the statute specifically contemplated criminalizing a "scheme" of activity, rather than only a single act. Moreover, the court in *Margiotta* never mentions prosecutorial discretion or any kind of presumption.

Nevertheless, the concurrence is correct that the Second Circuit, in at least one case, has held that *Margiotta* created a " 'general rule' "; (emphasis omitted); that a single count may be premised on multiple acts if the acts constitute " 'a single scheme,' " regardless of whether the statute actually criminalizes a scheme or a continuing course of conduct, and thus no duplicity or unanimity issue arises. See *United States* v. *Moloney*, 287 F.3d 236, 240 (2d Cir.) (acknowledging "general rule" that, unless explicitly prohibited by legislature, "criminal charges may aggregate multiple individual actions that otherwise could be charged as discrete offenses as long as all of the actions are part of 'a single scheme' "), cert. denied, 537 U.S. 951, 123 S. Ct. 416, 154 L. Ed. 2d 297 (2002).

State *v.* Douglas C.

conduct or only single acts. Rather than conduct a full analysis pursuant to § 1-2z and come to a conclusion about the statute's meaning, as we are obliged to do, the concurrence's rule would hold that, if the statute is "facially silent"—in other words, if explicit language is not used, such as the phrase "course of conduct"— then a criminal statute is silent regarding whether it criminalizes a single act, a continuous course of conduct, or both, and a prosecutor can choose which charging method to apply. We decline to apply such a rule and instead follow the dictates of § 1-2z. Thus, we need not decide whether a presumption exists and should apply when the legislature is arguably silent as to its intent regarding whether a statute criminalizes a single act, a continuous course of conduct, or both.

Second, although, as the concurrence suggests, this court does at times "[give] decisions of the Second Circuit 'particularly persuasive weight in the resolution of issues of federal law,' " we are hesitant to adopt the case law of the Second Circuit when "the great weight" of federal jurisprudence conflicts with it. *Saunders* v. *Commissioner of Correction*, 343 Conn. 1, 17, 272 A.3d 169 (2022). As discussed previously, the majority of federal courts of appeals apply the test that we adopt today and do not adopt, apply, or even reference any presumption in the event of legislative silence on this issue.[19]

___

[19] The concurrence cites to cases from the United States Courts of Appeals for the Fourth, Sixth and Seventh Circuits in an attempt to show that the Second Circuit is not an outlier in adopting a presumption in favor of affording prosecutors discretion in charging a crime based on a single act or on a continuous course of conduct when the statutory language and legislative history are silent regarding whether a crime may be charged as a single act, a continuous course of conduct, or both. See footnotes 4 and 25 of the concurring opinion; see also *United States* v. *Kamalu*, supra, 298 Fed. Appx. 254; *United States* v. *Davis*, supra, 471 F.3d 790–91; *United States* v. *Alsobrook*, supra, 620 F.2d 142; *United States* v. *Tanner*, supra, 471 F.2d 138. In none of these cases, however, did the courts mention, let alone apply, a presumption affording prosecutors discretion in the event of legislative silence regarding whether the statute criminalized a continuous

State *v.* Douglas C.

Third, whether to apply a presumption in interpreting a criminal statute to determine if it criminalizes a continuous course of conduct is an issue of *state* law, even though this determination is necessary to the adjudication of the defendant's federal unanimity claim. In other words, under the second prong of the federal test for a unanimity claim regarding instances of conduct, the court must determine if the statute criminalizes a continuous course of conduct. However, whether the statute in fact criminalizes a continuous course of conduct is an issue of state law, as it involves the interpretation

course of conduct, a single act, or both. Rather, the holdings of most of these cases relied on the plain language of the statutes at issue.

The concurrence is correct, however, that the court in *Tanner* noted that the prosecutor had discretion in that case. But the concurrence takes this statement out of context. The court stated this only after noting the broad language of the statute at issue: "The prohibited conduct is described in 18 U.S.C. § 837 [1964] as the act of transporting explosives in interstate commerce for the purpose of destroying any building or other real or personal property. Differentiating single offenses under this section requires defining at what point the act of transporting explosives is completed." *United States* v. *Tanner*, supra, 471 F.2d 138. The Seventh Circuit held that prosecutors had discretion in making this determination because "[t]he act of transporting explosives" could be defined to include both a single incident and a continuous course of conduct. Id., 139. Thus, *Tanner* does not support the concurrence's argument that a presumption in favor of prosecutorial discretion should apply if the statute is silent in this regard.

Similarly, the concurrence is correct that the court in *Alsobrook* stated that "[t]he determination of whether a group of acts represents a single, continuing scheme or a set of separate and distinct offenses is a difficult one that must be left at least initially to the discretion of the prosecution." *United States* v. *Alsobrook*, supra, 620 F.2d 142. The court, however, immediately followed this statement by stating that "[t]his discretion . . . is not without limits"; id.; with a citation to *United States* v. *Tanner*, supra, 471 F.2d 128, which, as discussed, examined the statutory language in determining that the prosecutor could charge a crime as a continuing course of conduct.

Finally, we note that *United States* v. *Kamalu*, supra, 298 Fed. Appx. 254, does not support the concurrence's proposed test. Rather than apply the concurrence's test, the Fourth Circuit held that the government had improperly charged the defendant with a duplicitous single count "despite the allegation of a continuing scheme . . . ." Id. The court, however, held that this duplicity was not prejudicial. Id.

State *v.* Douglas C.

of our own statutes. The concurrence contends that
there is "an ancient common-law pleading tradition,
one that the legislature is well aware of and continues
to implicitly approve," pursuant to which prosecutors
have discretion to charge a crime based on a single act
or a continuous course of conduct when a statute is
silent on the issue. Although this "tradition" is not so
well established that it is written anywhere, the concur-
rence derives this "tradition" from the fact that "prose-
cutors have been charging crimes as continuing
offenses since the nineteenth century," and thus our
state has a "long history of affording prosecutors broad
discretion in the charging of crimes . . . ."

The presumption that the concurrence touts is not
one that any of our state decisions supports and cer-
tainly not one that we would credit the legislature with
being aware of at the time it enacted the statute at
issue. Even if the charging practices of prosecutors, or
the litigation positions of any parties, were the stuff
of legislative acquiescence,[20] any history of the state's
routinely charging in this fashion has more obvious
explanations than legislative acceptance of an unarticu-
lated presumption of prosecutorial discretion found

---

[20] This court has limited the scope of the legislative acquiescence doctrine.
For example, this court has explained that the doctrine applies to decisions
of the appellate courts but not to unofficially reported trial court decisions.
See *Chestnut Point Realty, LLC* v. *East Windsor*, 324 Conn. 528, 544 n.9,
153 A.3d 636 (2017); see also *Mayer* v. *Historic District Commission*, 325
Conn. 765, 778, 160 A.3d 333 (2017) (under doctrine of legislative acquies-
cence, court "may infer that the failure of the legislature to take corrective
action within a reasonable period of time following a definitive judicial
interpretation of a statute signals legislative agreement with that interpreta-
tion" (internal quotation marks omitted)). Although this court has not been
explicitly asked to determine if this doctrine applies to parties' litigation
practices or the practices of constitutional officers, including prosecutors,
we have held that this doctrine does not extend "to presume the legislature's
awareness of municipal legislation that has not been subjected to judicial
scrutiny and that may vary in form among municipalities," such as zoning
regulations. *Kuchta* v. *Arisian*, 329 Conn. 530, 547, 187 A.3d 408 (2018).

State *v.* Douglas C.

nowhere in the decisions of this court, namely, that (1) defendants may not often have challenged this method of charging because, if successful, it would likely result in multiple charges and greater exposure, as the concurrence points out, and (2) only recently, since federal unanimity case law has developed to recognize claims of unanimity as to instances of conduct, has the proper interpretation of the statute had unanimity implications.

Thus, the fact that we have cases that merely state that a prosecutor charged a defendant under a single count based on a continuous course of conduct but the nature of the charging was not challenged on appeal does not support the concurrence's proposed presumption. See, e.g., *State* v. *Vumback*, supra, 263 Conn. 217, 219–20 (although defendant was charged with first and third degree sexual assault of child, as well as risk of injury to child "on divers dates between approximately June, 1990 through July, 1996," and challenged trial court's denial of request for bill of particulars, court did not address whether statutes criminalized continuous course of conduct or whether prosecutor had discretion in this regard (internal quotation marks omitted)); *State* v. *Snook*, 210 Conn. 244, 263, 265–66, 555 A.2d 390 (although state charged defendant with sexual assault in second degree and sexual assault in third degree for engaging in sexual intercourse with victim "on divers days between June, 1979, and January, 1984," defendant raised only double jeopardy claim, which did not require court to decide if statutes criminalized continuous course of conduct (internal quotation marks omitted)), cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989); *State* v. *Silver*, 139 Conn. 234, 247, 93 A.2d 154 (1952) (*O'Sullivan*, *J.*, concurring) (merely mentioning that state charged that, "at the [c]ity of Hartford on divers dates, the [defendant] did commit an indecent assault upon a minor" but not deciding if this was proper or analyzing statute to determine if it

State *v.* Douglas C.

criminalized course of conduct); *State* v. *William B.*, 76 Conn. App. 730, 735, 822 A.2d 265 (although state charged specifically that, "on divers dates between 1990 and 1994, as a continuing course of conduct, the defendant engaged in sexual intercourse with the victim, who was younger than thirteen, in violation of § 53a-70 (a) (2)," defendant did not challenge state's method of charging), cert. denied, 264 Conn. 918, 828 A.2d 618 (2003); *State* v. *Osborn*, 41 Conn. App. 287, 295, 676 A.2d 399 (1996) (although state charged defendant with attempt to commit sexual assault of child "on diverse dates between June 20, 1986, and June 20, 1991," defendant did not challenge state's method of charging); *State* v. *Mancinone*, 15 Conn. App. 251, 256 n.5, 545 A.2d 1131 (although state charged defendant with two counts of sexual assault in second degree by alleging that he engaged in sexual intercourse with minors "on divers dates between August 1983 and November 1984," because defendant was acquitted on those charges, appeal did not involve challenge to state's method of charging or require court to decide whether statute criminalized continuous course of conduct (internal quotation marks omitted)), cert. denied, 209 Conn. 818, 551 A.2d 757 (1988), cert. denied, 489 U.S. 1017, 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989). That is not the same as this court holding that such an interpretation is proper or that a presumption of prosecutorial discretion exists. Most important, for purposes of determining legislative intent, of course, the past practice of prosecutors is not a relevant factor under § 1-2z in ascertaining whether a statute criminalizes a continuing course of conduct.

Additionally, contrary to the concurrence's contention, there is no case law adopting and applying this presumption. For example, the concurrence cites to a nineteenth century case as proof that this court historically has afforded prosecutors discretion to charge crimes based

either on a single act or a continuous course of conduct when a statute is silent in this regard. See *State* v. *Bosworth*, 54 Conn. 1, 2, 4 A. 248 (1886) ("all offenses involving continuous action, and which may be continued from day to day, may be so alleged"). In *Bosworth*, the state charged the defendant with a single count of cruelly overworking animals, one count of neglecting animals, and one count of depriving animals of sustenance, with each count premised on multiple acts of cruelty to animals. Id. The court explained that the crime of cruelty to animals "may consist of overworking, [underfeeding], or depriving of proper protection, or all these elements may combine and constitute the offense." Id. In other words, the court examined the nature of what the statute criminalized and determined that it criminalized both each single act of cruelty, as well as a continuous course of these acts of cruelty. Thus, the offense at issue was one that may involve continuous action. An examination of the decision shows that, when the court stated that "all offenses involving continuous action, and which may be continued from day to day, may be so alleged," it did not mean that any crime involving continuous action may be charged as such but, rather, that any statutory offense that criminalizes continuous action may be charged as such. Id.

Similarly, the concurrence cites to *State* v. *Cook*, 75 Conn. 267, 53 A. 589 (1902), in support of its argument that, for decades, "Connecticut courts [have] recognized that not all crimes are either exclusively individual act or course of conduct crimes. Some crimes that were not inherently continuing offenses could be charged either as individual acts or with a continuando." *Cook*, however, does not support adopting a presumption in favor of prosecutorial discretion when a criminal statute is silent regarding whether it criminalizes each act individually or a continuing course of conduct. Although

State *v.* Douglas C.

the precise statute at issue is not cited or quoted in
*Cook*, this court explained in that case that "[t]he statute
under which the accused [was] prosecuted enumerates
various acts of cruelty to animals for which a punish-
ment is imposed, among which are the depriving [of]
an animal of necessary sustenance, and the unnecessary
failure, by one having the charge or custody of any
animal, to provide it with proper food, drink, or protec-
tion from the weather." *State* v. *Cook*, supra, 268. This
language is consistent with the language of our animal
cruelty statute at that time; see General Statutes (1902
Rev.) § 1331;[21] which obviously could be interpreted as
criminalizing both a course of conduct and a single act.
Moreover, not only did the court's decision in *Cook* not
refer to, adopt, or apply any presumption, it also did
not involve a challenge to the state's method of charging
or contain any statutory interpretation, which is critical
to an analysis of a claim of unanimity as to instances
of conduct.

It is true that a handful of Appellate Court cases
have held that there is no unanimity violation when
a defendant has been charged in a single count with
violating the same statute based on multiple acts, espe-
cially in the context of ongoing sexual assault of chil-
dren. See, e.g., *State* v. *Saraceno*, supra, 15 Conn. App.
225–27 and n.1 (decided prior to recognition of claims
of unanimity as to instances of conduct, not deciding
whether statute criminalized continuing course of con-
duct, and not applying any presumption in favor of

[21] General Statutes (1902 Rev.) § 1331 provides: "Every person who over-
drives, drives when overloaded, overworks, tortures, deprives of necessary
sustenance, mutilates, or cruelly beats, or kills, any animal, or causes it to
be done; and every person who, having the charge or custody of any such
animal, inflicts unnecessary cruelty upon it, or unnecessarily fails to provide
it with proper food, drink, or protection from the weather, or who cruelly
abandons it, or carries it in an unnecessarily cruel manner, shall be fined
not more than two hundred and fifty dollars, or imprisoned not more than
one year, or both."

State *v.* Douglas C.

prosecutorial discretion), cert. denied, 209 Conn. 823, 552 A.2d 431 (1988), and cert. denied, 209 Conn. 824, 552 A.2d 432 (1988); see also *State* v. *Romero*, 269 Conn. 481, 504, 849 A.2d 760 (2004) (same); *State* v. *Michael D.*, 153 Conn. App. 296, 322, 101 A.3d 298 (same), cert. denied, 314 Conn. 951, 103 A.3d 978 (2014); *State* v. *Vere C.*, 152 Conn. App. 486, 508–10, 98 A.3d 884 (same), cert. denied, 314 Conn. 944, 102 A.3d 1116 (2014); *State* v. *Jessie L. C.*, 148 Conn. App. 216, 227, 84 A.3d 936 (same), cert. denied, 311 Conn. 937, 88 A.3d 551 (2014). These cases do not support adopting the concurrence's proposed presumption, as they do not apply a presumption. Rather, these cases were decided under the test set forth in *Gipson* and before this court recognized claims of unanimity as to instances of conduct. As we explained, the *Gipson* test did not require that a court analyze whether the statute at issue criminalizes a continuous course of conduct and is not the proper test for determining claims of unanimity regarding instances of conduct.

Moreover, we disagree with the concurrence that its presumption is supported by "the fact that the legislature has, in certain instances, expressly provided either that a particular statute must be charged as a continuing offense; see, e.g., General Statutes § 53a-181d (b) (1) and (2); or that it must not be charged as a continuing offense; see, e.g., General Statutes § 15-173"; because this shows that, "when the legislature wishes to speak on the issue, one way or the other, it knows how to do so." These statutes do show that, when the legislature explicitly intends to allow a charge to be based only on a continuous course of conduct or a single act, it knows how to do so. This does not prove, however, that the legislature intended that other statutes would provide prosecutors with discretion. For example, under our second degree stalking statute, § 53a-181d, the legislature specifically proscribed certain continu-

State *v.* Douglas C.

ous courses of conduct; see General Statutes § 53a-181d (b) (1), as amended by Public Acts 2021, No. 21-56, § 2 ("knowingly engages in a *course of conduct* directed at or concerning a specific person that would cause a reasonable person to (A) fear for such specific person's physical safety or the physical safety of a third person; (B) suffer emotional distress; or (C) fear injury to or the death of an animal owned by or in possession and control of such specific person" (emphasis added)); as well as certain kinds of single acts. See General Statutes § 53a-181d (b) (3) ("[s]uch person, for no legitimate purpose and with intent to harass, terrorize or alarm, by means of electronic communication, including, but not limited to, electronic or social media, discloses a specific person's personally identifiable information without consent of the person"). Similarly, under subsection (a) (1) of our risk of injury statute, the legislature specifically criminalized both a single act and a continuous course of conduct through the use of the terms "act" and "situation," respectively. See General Statutes § 53-21 (a) (1) ("wilfully or unlawfully causes or permits any child under the age of sixteen years to be *placed in such a situation* that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or *does any act* likely to impair the health or morals of any such child" (emphasis added)). Thus, by the concurrence's own logic, these statutes show that, when the legislature intends to explicitly criminalize both an act and a continuous course of conduct, it knows how to do so. That does not mean that such explicit statutory language is required to interpret a statute as criminalizing both an act and a continuous course of conduct. As previously discussed, we by no means are adopting a presumption against such charging when the plain language of a statute is not explicit in this regard. Rather, courts must closely ana-

State *v.* Douglas C.

lyze the language of the statute, case law interpreting the statute, the statutory scheme and, if needed, the legislative history to determine if a statute criminalizes both an act and a continuous course of conduct.

Finally, the concurrence asserts that adopting this presumption is the superior approach based largely on how it believes the majority test will apply to sexual assault cases involving children. There are indeed unique challenges to proving charges involving child victims of sexual assault. Legislatures and courts can, should, and often have responded appropriately, including by extending statutes of limitations, or by modifying rules of evidence.[22] See General Statutes § 54-193; see also Conn. Code Evid. § 4-5 (b). However, the concurrence's proposed presumption would not apply only in child sexual abuse cases. For this reason alone, it is more prudent for us to defer to the legislature to address this specific issue than to adopt a general presumption that would apply to all criminal statutes.

[22] Adopting the concurrence's presumption that, in the event of the legislature's silence, prosecutors may choose to charge a course of conduct in their discretion might impact policies the legislature has already considered, including those involving sexual assault. For example, in 2019, the legislature extended the statute of limitations for sexual assault in which the victim was age twenty-one or older from five years to twenty years, and abolished the statute of limitations for sexual assault in which the victim was a minor at the time of the offense. See Public Acts 2019, No. 19-16, § 17, codified at General Statutes (Supp. 2020) § 54-193 (a) (1) (B) and (b). At the time the legislature made this policy decision, our case law was clear that sexual assault is a single act crime, not a continuous course of conduct crime. See *State* v. *Joseph V.*, 345 Conn. 516, 543–44 n.12,      A.3d      (2022). Allegations of a continuous course of conduct can operate to toll the statute of limitations or, as a practical matter, reach back and capture acts beyond the statute of limitations. See 1 C. Torcia, Wharton's Criminal Law (15th Ed. 1993) § 92, p. 631 ("A statutory period of limitation begins to run on the day after the offense is committed. An offense is deemed committed when every element thereof has occurred or, if the offense is based [on] a continuing course of conduct, when the course of conduct is terminated." (Footnote omitted.)). If the legislature had thought that the concurrence's proposed presumption would become the law, it might have considered that in establishing a statute of limitations.

345 Conn. 421        JANUARY, 2023        461

State *v.* Douglas C.

As we discuss in the companion case we also decide today, *State* v. *Joseph V.*, 345 Conn. 516,     A.3d (2022), the test we adopt today does not necessarily lead to the hypothetical parade of horribles the concurrence portends. In particular, the test we apply does not result in a prohibition on the state's charging a defendant with a single count of sexual assault premised on a continuous course of contact, as long as there is either a specific unanimity instruction or an instruction that the jury must be unanimous that all alleged acts occurred. Moreover, in *Joseph V.*, we leave open the possibility that "there [may exist] a common-law exception to the right to jury unanimity for a continuing course of conduct of sexual assault of children when there is only general testimony." Id., 555 n.20. We note that, in sexual assault cases involving only general testimony, a duplicitous count that is not cured by a specific unanimity instruction likely will not be harmful.

D

Before applying the foregoing federal law to the defendant's specific claims, we note that appellate courts in this state have not recognized or applied this case law to claims of unanimity as to instances of conduct. In particular, this court has not distinguished between unanimity of elements and unanimity of instances of conduct but, rather, has treated them similarly. Compare *State* v. *Niemeyer*, 258 Conn. 510, 525, 782 A.2d 658 (2001) (unanimity of elements case), *State* v. *Dyson*, 238 Conn. 784, 793, 680 A.2d 1306 (1996) (same), *State* v. *Tucker*, 226 Conn. 618, 646, 629 A.2d 1067 (1993) (same), *State* v. *Reddick*, 224 Conn. 445, 452–53, 619 A.2d 453 (1993) (same), *State* v. *Famiglietti*, supra, 219 Conn. 618 (same), *State* v. *Smith*, 212 Conn. 593, 606, 563 A.2d 671 (1989) (same), *State* v. *James*, 211 Conn. 555, 584–85, 560 A.2d 426 (1989) (same), and *State* v. *Suggs*, 209 Conn. 733, 760–61, 553 A.2d 1110 (1989) (same), with *State* v. *Sorabella*, 277 Conn. 155,

State *v.* Douglas C.

206–207, 891 A.2d 897 (multiple acts case), cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006), *State* v. *Ceballos*, 266 Conn. 364, 368–69, 417–20 and n.55, 832 A.2d 14 (2003) (same),[23] *State* v. *Jennings*, 216 Conn. 647, 661–64, 583 A.2d 915 (1990) (same), and *State* v. *Spigarolo*, 210 Conn. 359, 388–92, 556 A.2d 112 (same), cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989).[24]

These cases have failed to heed the relevant federal precedent discussed in part I B of this opinion, which clearly distinguishes between unanimity claims involving a single count premised on multiple, separate instances of conduct, and unanimity claims involving a single count premised on the violation of multiple statutes, statutory subsections, or statutory clauses. See *United States* v. *Correa-Ventura*, supra, 6 F.3d 1080 (noting that *Schad* test applies to cases involving single count premised on violation of multiple statutes, statu-

[23] In *Ceballos*, the defendant argued that we should follow case law from other states requiring the jury to agree on the underlying act when determining if the defendant was guilty of each count charged. *State* v. *Ceballos*, supra, 266 Conn. 420–21 n.55. We rejected this argument on the ground that these precedents conflicted with the federal test announced in *Gipson*, which this court had adopted without considering any federal precedent on this issue. Id., 421 n.55.

[24] The Appellate Court even has suggested that unanimity concerns arise only when a single count is premised on multiple statutes, statutory subsections, or statutory clauses, not when a single count is premised on multiple instances of conduct, each of which could establish a violation of a single statute, statutory subsection, or statutory clause. See *State* v. *Mancinone*, supra, 15 Conn. App. 276–77; see also *State* v. *Joseph V.*, 196 Conn. App. 712, 740, 230 A.3d 664 (2020) (requirement that court give jury specific unanimity charge "comes down to whether the defendant's criminal liability for each offense was premised on his having violated one of multiple statutory subsections"), rev'd in part, 345 Conn. 516,      A.3d      (2022); *State* v. *Douglas C.*, supra, 195 Conn. App. 747, 752 (unanimity instruction is necessary only if count of information at issue is based on multiple, factual allegations that amount to multiple statutory subsections or multiple statutory elements of offense). This court has not addressed this issue. See *State* v. *Spigarolo*, supra, 210 Conn. 391 ("[w]e need not determine whether *Mancinone*'s primary analysis of the unanimity requirement is correct")."

tory subsections, or statutory clauses but that different test applies in cases involving single count premised on multiple, separate instances of conduct). In light of the unique nature of these two different unanimity issues, we are persuaded by and agree with the distinction federal courts have drawn between claims of unanimity as to elements and claims of unanimity as to instances, with separate tests applying to each type of claim. As a result, we adopt the foregoing federal test for claims of unanimity as to instances of conduct. To the extent that our prior case law or that of the Appellate Court has ignored this distinction, we overrule those cases.

II

Applying the federal test articulated in part I B of this opinion to each count at issue in the present case, in turn, we disagree with the defendant that counts one, five, and six, which each alleged risk of injury to a child, were duplicitous. Because both counts one and six were premised on similar testimony about the frequent touching of N's and T's breasts in a sexual and indecent manner, we first analyze these two counts together. Under the first prong of the test, we determine that both of these counts were premised on multiple, separate incidents of conduct. As to count one, there was testimony that the defendant touched N's breasts in a sexual and indecent manner frequently during weekly visits to his residence, with this inappropriate touching ultimately escalating to oral sex. Therefore, clearly as to count one, evidence was presented to the jury of multiple, separate incidents of conduct, not a single incident. The same is true of count six, in support of which there was testimony that the defendant touched T's breasts in a sexual and indecent manner frequently whenever she was at his residence where she regularly attended gatherings and parties, and babysat. This evidence shows that, as the case was presented to the jury, each

State *v.* Douglas C.

count was premised on evidence of multiple, separate incidents of conduct, not a single incident.

Because counts one and six were premised on multiple, separate incidents of conduct, we must proceed to the second prong of the test and determine whether each incident could establish an independent violation of § 53-21 (a) (2). We hold that, although the state has discretion to charge the defendant with violating § 53-21 (a) (2) as to each incident of conduct that occurred, that statute also permits the state to properly charge and present to the jury these incidents as a continuing course of conduct.

Section 53-21 (a) prohibits "[a]ny person . . . (2) [from having] contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subject[ing] a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . ." General Statutes § 53a-65 (8) defines "intimate parts" as "the genital area or any substance emitted therefrom, groin, anus or any substance emitted therefrom, inner thighs, buttocks or breasts."[25]

It is not clear from the plain language of § 53-21 (a) (2) that the multiple, separate instances of conduct at issue in the present case were separate and distinct violations of that statute. At first blush, the phrase "contact with the intimate parts" in the risk of injury statute does not appear to clarify whether the statute criminalizes a continuing course of conduct or limits its scope to a single occurrence. Because of this, the concurrence

---

[25] Although § 53a-65 (8) has been amended since the defendant's commission of the crimes that formed the basis of his conviction; see Public Acts 2006, No. 06-11, § 1; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 53a-65 (8).

State *v.* Douglas C.

concludes that the statute is ambiguous or silent on this issue. The problem is that the statute is not silent. The fact that the legislature did not explicitly use the phrase "continuous course of conduct" or "each single act" does not end our analysis. Such talismanic phrases are not required. Rather, we must look to the definitions of the terms used. Although "contact" is not defined by the statute, the plain meaning of this term, as defined by a dictionary, includes a "union or junction of body surfaces . . . a touching or meeting . . . ." Webster's Third New International Dictionary (2002) p. 490. This definition suggests that the act of having "contact" is a singular incident—a single touching or meeting of body parts. This definition of "contact" as referring to each singular incident is consistent with this court's prior case law interpreting § 53-21, which this court must consider in determining under § 1-2z whether the statute is plain and unambiguous. See, e.g., *State* v. *Moreno-Hernandez*, 317 Conn. 292, 299, 118 A.3d 26 (2015) ("[i]n interpreting the [statutory] language . . . we do not write on a clean slate, but are bound by our previous judicial interpretations of the language and the purpose of the statute" (internal quotation marks omitted)). In case law prior to the 1995 amendment of § 53-21; see Public Acts 1995, No. 95-142, § 1 (P.A. 95-142); this court held that risk of injury to a child may be charged under a continuing course of conduct theory. See *State* v. *Spigarolo*, supra, 210 Conn. 390–92 (noting that state charged risk of injury count under "situation" prong of § 53-21 premised on multiple acts of sexual contact and presented it to jury as continuing course of conduct crime, and court cited to *State* v. *Hauck*, 172 Conn. 140, 150, 374 A.2d 150 (1976), which held that violation of situation prong of § 53-21 may be premised on continuing course of conduct).[26] Since the

[26] The concurrence asserts that, in *Hauck*, this court presumed that the prosecution had discretion in the absence of specific language permitting or prohibiting the charging of a crime as a continuing course of conduct because the court in that case did not rely on the statutory language but

State *v.* Douglas C.

enactment of P.A. 95-142, § 1, we never have held that the legislature no longer intended that risk of injury to a child would be a continuing course of conduct crime. Thus, the plain language of the statute is ambiguous.

The legislative history demonstrates that, when what is now subsection (a) (2) was established in 1995 by P.A. 95-142, § 1, the purpose of the amendment was to "[divide] the risk of injury . . . [statute] into two parts . . . ." 38 H.R. Proc., Pt. 7, 1995 Sess., p. 2590, remarks of Representative James A. Amann. The purpose of the statute was manifestly *not* to alter the state's ability to charge risk of injury as a continuing course of conduct crime when the facts involved sexual contact. Specifically, prior to the amendment, the statute had been used to charge both sexual and nonsexual offenses. The statute generally criminalized conduct by one who

---

on only policy rationales in holding that risk of injury may be charged as a continuing course of conduct crime. It is true that the analysis in *Hauck* is very short and does not specifically address the language of the risk of injury statute. Neither does the court in *Hauck* refer to a presumption in favor of prosecutorial discretion, however. All that this court said in that case was that "[t]he offenses charged here were obviously of a continuing nature and it would have been virtually impossible to provide the many specific dates [on] which the acts constituting the offenses occurred." *State* v. *Hauck*, supra, 172 Conn. 150.

It is important to note that, in *Hauck*, the applicable risk of injury statute criminalized sexual contact as both an act and a situation. See General Statutes (Rev. to 1972) § 53-21. A situation can certainly involve a continuing course of conduct. This is supported by case law that followed *Hauck*, in which this court held that a single count of risk of injury to a child under the situation prong premised on ongoing sexual contact could be charged as a continuing course of conduct. See *State* v. *Spigarolo*, supra, 210 Conn. 383–84, 391–92. Thus, to the extent *Hauck* was ambiguous regarding its reliance on the language of the statute, subsequent case law clarifies that a continuing course of conduct is contemplated by the statutory term "situation." See, e.g., id.; see also *State* v. *Payne*, 240 Conn. 766, 775, 695 A.2d 525 (1997) (citing *State* v. *Velez*, 17 Conn. App. 186, 198–99, 551 A.2d 421 (1988), cert. denied, 210 Conn. 810, 556 A.2d 610, cert. denied, 491 U.S. 906, 109 S. Ct. 3190, 105 L. Ed. 2d 698 (1989), in which court determined that sexual activity with children created situation that was likely to be harmful to their physical, moral, and emotional well-being).

State *v.* Douglas C.

wilfully or unlawfully placed a child "in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child . . . ." General Statutes (Rev. to 1993) § 53-21. Prior to the enactment of P.A. 95-142, § 1, this court had interpreted § 53-21 as criminalizing a continuing course of sexual contact in which a child was placed in a situation that was likely to be harmful to the child's health and morals. See *State* v. *Payne*, 240 Conn. 766, 774–75, 695 A.2d 525 (1997) (citing *State* v. *Velez*, 17 Conn. App. 186, 199, 551 A.2d 421 (1988), cert. denied, 210 Conn. 810, 556 A.2d 610, cert. denied, 491 U.S. 906, 109 S. Ct. 3190, 105 L. Ed. 2d 698 (1989), which stated that sexual activity with children, prior to enactment of P.A. 95-142, § 1, created situation likely to be harmful to their physical, moral, and emotional well-being), overruled in part on other grounds by *State* v. *Romero*, 269 Conn. 481, 849 A.2d 760 (2004).

Prior to 1995, § 53-21 criminalized both sexual contact and nonsexual contact without distinction, and thus it was not clear from the conviction itself whether the defendant had been convicted of a crime that was sexual in nature. This made it difficult to place defendants, who were convicted of risk of injury to a child because of sexual contact, on the sex offender registry. For ease of identifying sex offenders, P.A. 95-142, § 1, divided the statute into sexual contact offenses under what is now subsection (a) (2) and nonsexual contact offenses under what is now subsection (a) (1), allowing for the classification of sex offenders. See 38 S. Proc., Pt. 5, 1995 Sess., pp. 1769–70, remarks of Senator Martin M. Looney ("what the first part of the bill deals with [is] the change in the definition of risk of injury to a minor, and we have a, separating into sections that deal with a, a sexual component, and a [nonsexual] component, so that the offense can be more carefully

State *v.* Douglas C.

delineated''); 38 H.R. Proc., Pt. 7, 1995 Sess., p. 2590, remarks of Representative Amann (''Section one divides the risk of injury to a minor into two parts, which by the way, is not on the list of current sex offender crimes. One [risk of injury] crime is going to be classified as a sex offender crime and one is not.'').[27]

By dividing sexual and nonsexual contact offenses with the enactment of P.A. 95-142, § 1, the legislature maintained in subsection (a) (1), for nonsexual contact, the distinction between the creation of a ''situation'' and the commission of an act. See General Statutes § 53-21 (a) (1) (''wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be

_____

[27] This statement does not show that the legislature intended to alter the substance of the statute but, rather, that it intended to separate sexual and nonsexual contact. The fact that this amendment allows the new subdivision pertaining to sexual contact to be classified as a sex offender crime does not indicate that the substance of the crime itself was altered.

Nevertheless, the concurrence contends that the legislature intended to create a '' 'new' '' risk of injury statute regarding sexual contact, and thus our prior case law should not apply, because, in two instances in the legislative history, Senator Thomas F. Upson referred to the risk of injury statute as ''new . . . .'' See 38 S. Proc., Pt. 5, 1995 Sess., p. 1766, remarks of Senator Upson (''[b]ecause while the original bill talks about a new risk-of-injury statute, risk of injury by having contact with the intimate parts of a child under sixteen, becomes a [c]lass C felony''); id., p. 1777, remarks of Senator Upson (''[f]irst of all, it creates a new crime, risk of injury, explained a little earlier, by having contact with the intimate parts of a child under sixteen, in a sexual and indecent manner, likely to impair the health or morals of the child''). The concurrence cherry-picks the term ''new'' out of these quotations without reference to the broader context. As explained, the legislative history makes clear that a ''new'' crime was created solely to distinguish sexual contact and nonsexual contact. Nothing in the legislative history manifested a legislative intent to otherwise alter the substance of the crime itself. The ''change in the definition of risk of injury'' was limited to the distinction between sexual and nonsexual contact, as Senator Looney immediately clarified. See 38 S. Proc., supra, p. 1769, remarks of Senator Looney (''what the first part of the bill deals with [is] the change in the definition of risk of injury to a minor, and we have a, separating into sections that deal with a, a sexual component, and a [nonsexual] component'').

State *v.* Douglas C.

injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child''); see also *State* v. *Payne*, supra, 240 Conn. 774 (''[a]lthough both parts of the statute are intended to protect children from predatory and potentially harmful conduct of adults, the two parts nonetheless are directed at different kinds of harm to children''). The legislature did not draw this distinction in criminalizing sexual contact under subsection (a) (2). Nothing in this legislative history suggests that the legislature intended to distinguish between the creation of a situation and the performance of a single act under subsection (a) (2) or that the legislature intended to no longer criminalize a continuing course of conduct of sexual and indecent touching of intimate parts. There is no indication that the legislature sought to alter the substance of the crime. Rather, the legislative history shows that the legislature intended only to separate sexual and nonsexual contact. By not explicitly making the distinction between an act and a situation, and in the absence of any evidence that the legislature intended to alter the scope of the crime of risk of injury to a child in sexual contact cases to only acts and not situations, it is clear that the legislature, in P.A. 95-142, § 1, intended to criminalize both situations and acts without treating them as separate elements. Thus, this legislative history shows that, in enacting § 53-21 (a) (2), the legislature intended to continue to criminalize both a single instance of contact as well as an ongoing course of conduct.

Not only does § 53-21 (a) (2) contemplate criminalizing a continuing course of conduct, but, in the present case, the state charged the defendant under such a theory in counts one, five, and six. Specifically, in count one, the state charged the defendant with committing risk of injury to a child by having ''contact with the intimate parts'' of N ''in or about 2005 through January 8,

State *v.* Douglas C.

2007,'' and, in count six, the state charged the defendant with committing risk of injury to a child "in or about 2005 through October 23, 2007,'' by having "contact with the intimate parts'' of T. This language put the defendant on notice that he was charged with touching the intimate parts of N and T in a sexual and indecent manner over a period of time, rather than being charged with a single instance of contact as to each child on a single date. This is consistent with how the prosecutor presented and argued these counts to the jury. The prosecutor argued that, although the jury needed to find that only a single incident of sexual contact occurred to find the defendant guilty under each count, the state's theory was that the defendant continuously engaged in this inappropriate touching during the alleged time period.

Moreover, based on the evidence admitted at trial, as to counts one and six, the jury reasonably could have found that the multiple, separate incidents of conduct did indeed constitute a continuing course of conduct. As to count one, the testimony of N and other victims showed that, although the multiple incidents of sexual and indecent touching of N's intimate parts occurred for a prolonged period of time—approximately two years— there was only a relatively short period of time between the occurrence of each incident, as this conduct happened on a weekly basis. See *United States* v. *Berardi*, supra, 675 F.2d 898 (concluding that "three alleged acts of obstruction occurred within a relatively short period of time'' despite each act having occurred months apart); see also *United States* v. *Root*, 585 F.3d 145, 155 (3d Cir. 2009) (multiple acts may be considered part of continuous course of conduct even if conduct spanned years). Additionally, these incidents were committed by a single defendant, involved a single victim (N), and furthered a single, continuing objective to touch N in a sexual and indecent manner.

State *v.* Douglas C.

Similarly, as to count six, the testimony of T and other victims showed that the multiple incidents of sexual and indecent touching of T's intimate parts occurred frequently during a relatively short period of time (on a regular basis when T was at the defendant's residence during the span of two years), were committed by a single defendant, involved a single victim (T), and furthered a single, continuing objective to touch T in a sexual and indecent manner whenever other adults were unaware. Accordingly, counts one and six were premised on a continuing course of conduct. As a result, these counts were not duplicitous, and thus the trial court's failure to grant the defendant's requests for a bill of particulars or a specific unanimity instruction did not violate his right to jury unanimity.

Count five, however, differs from counts one and six in that it is premised on multiple acts of sexual and indecent contact with S's vagina and breasts during a single evening. As noted previously in this opinion, at times, "it may be difficult to determine whether a single count is premised on multiple acts, each of which is committed in the course of a single criminal episode of relatively brief, temporal duration, and thus constitutes alternative means of committing the elements at issue, or whether it is premised on multiple, separate and distinct acts, each of which could constitute a separate statutory violation." Part I B of this opinion; see *United States* v. *Newell*, supra, 658 F.3d 23–24. In the present case, the jury reasonably could have interpreted the evidence admitted in only one of two ways. Although the length of time is unclear, the testimony of S shows that this touching occurred during the course of a single evening. From this evidence, the jury reasonably could have found that these acts constituted a single criminal episode of relatively brief, temporal duration and thus did not constitute multiple, separate incidents of conduct under the first prong of the applicable test. Alterna-

State *v.* Douglas C.

tively, from this evidence, even if the jury found under prong one of the applicable test that there was enough time between each act for the acts to constitute multiple, separate incidents of conduct, the jury reasonably could have found under prong two of the applicable test that these acts constituted a continuing course of conduct, not separate violations of § 53-21 (a) (2), because this touching occurred during a relatively short period of time (multiple times during a single evening), was committed by a single defendant, involved a single victim (S), and furthered a single, continuing objective to touch S in a sexual and indecent manner. Additionally, as it did with counts one and six, the state charged and argued count five under a continuing course of conduct theory. As a result, count five was not duplicitous and thus did not violate the defendant's right to jury unanimity.

The judgment of the Appellate Court is affirmed.

In this opinion ROBINSON, C. J., and McDONALD and ECKER, Js., concurred.

MULLINS, J., with whom KELLER, J., joins, concurring in the judgment. I agree with the majority that we should formally recognize a distinction between two types of duplicitous charging: (1) the charging of distinct crimes that violate multiple statutory provisions or subsections within a single count (which implicates what the majority terms "unanimity as to elements"), and (2) the charging of multiple instances of the same crime within a single count (which implicates what the majority terms "unanimity as to instances"). See part I B of the majority opinion. I also agree with the majority's ultimate conclusion that the charges in this case were not impermissibly duplicitous and, therefore, that the conviction of the defendant, Douglas C., Jr., on

State *v.* Douglas C.

multiple counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2)[1] should be affirmed.

I part ways with the majority with respect to its statement of the law that governs duplicity/unanimity as to multiple instances of the same offense; see id.; and its application of that law to the present case. See part II of the majority opinion. Specifically, I believe that this court should adopt the more flexible, case-by-case framework used by the United States Court of Appeals for the Second Circuit, among other courts. We typically defer to that court's interpretations of federal law, and there are compelling reasons—both principled and practical—to do so with respect to the law of duplicity and unanimity. I believe that the majority's approach will lead to the needless repetitive charging of criminal defendants and make it virtually impossible to prosecute some of the most heinous crimes, especially those involving the sexual abuse of young children.

I

As I understand it, the majority adopts a two part test, with one significant exception, to assess challenges to a criminal prosecution in which a single count charges the defendant with violating a single statute in multiple, separate instances. First, we look to see whether there are multiple instances of conduct charged in one count, where each instance could establish a separate violation of the same statute based on the evidence submitted at trial. If so, the count is presumptively duplicitous. There is an exception, however, "when the multiple instances of conduct constitute 'a continuing course of conduct, during a discrete period of time . . . .' " Part

_____

[1] Although § 53-21 has been amended several times since the events underlying the present appeal; see Public Acts 2015, No. 15-205, § 11; Public Acts 2013, No. 13-297, § 1; Public Acts 2007, No. 07-143, § 4; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, unless otherwise noted, I refer to the current revision of the statute.

State *v.* Douglas C.

I B of the majority opinion. Course of conduct charging is not duplicitous, but only so long as the legislature specifically contemplated that the statute at issue could be charged as a course of conduct crime. Second, in the absence of a bill of particulars or a specific unanimity instruction, all duplicitous charges violate a defendant's constitutional right to jury unanimity, but the court then must consider whether that constitutional violation is harmless.

I readily acknowledge that this is *one* permissible approach to the issue of duplicitous charging. As I will discuss, a few of the federal courts of appeals, as well as a handful of our sister state courts, have adopted similar frameworks. And it is not without its merits, primary among them that it purports to be relatively simple and straightforward to apply. But see part II of this opinion.

I disagree, however, with the majority's contention that the "federal courts agree" with its per se ban on duplicitous charging. Part I B of the majority opinion. The very cases on which the majority relies expressly acknowledge that other courts of appeals apply a different framework,[2] and the majority concedes that the Second Circuit approach, among others, differs. See footnotes 15 and 18 of the majority opinion.

Much of the difference between my view and the majority's view centers on how to treat course of conduct charging. The framework I would have us adopt when assessing whether charging multiple instances in a single count is permissible or impermissible is the following four step approach: First, pursuant to General

_____

[2] See, e.g., *United States* v. *Schlei*, 122 F.3d 944, 979 (11th Cir. 1997) ("[s]everal [federal courts of appeals] have rejected the [Fifth Circuit's] analysis"), cert. denied, 523 U.S. 1077, 118 S. Ct. 1523, 140 L. Ed. 2d 674 (1998). As I discuss hereinafter, the duplicity framework that the majority has adopted largely tracks the approach followed by the Fifth Circuit.

State *v.* Douglas C.

Statutes § 1-2z, if the statute at issue either expressly permits or expressly bars course of conduct charging, or if there are other *clear* indicia of legislative intent, then courts must defer to the legislative will. Second, if the statute at issue is silent as to course of conduct charging, and there are no other clear indicia of legislative intent, as will most often be the case, then the prosecutor has the discretion to charge repeated violations of the statute as individual incidents or as a single course of conduct. Third, notwithstanding the prosecutor's charging decision, the trial court should determine whether such charging (1) would be unreasonable or unfair under the circumstances or (2) would otherwise violate the defendant's fifth and sixth amendment (and corresponding state constitutional) rights to notice, to present a defense, to a unanimous jury verdict, and to not twice be placed in jeopardy for the same offense, among others. Such determinations must be made on a case-by-case basis. If, at trial, the judge concludes that there is potential for unfairness or a constitutional violation, then the judge should not permit course of conduct charging and should either order that the charges be separated or give an instruction to the jury that it must be unanimous as to at least one specific incident.[3] Fourth, if an appellate court, on review, con-

[3] Under the Second Circuit approach, specific unanimity instructions generally are not required; see, e.g., *United States* v. *Natelli*, 527 F.2d 311, 325 (2d Cir. 1975), cert. denied, 425 U.S. 934, 96 S. Ct. 1663, 48 L. Ed. 2d 175 (1976); especially when multiple instances are properly charged as a course of conduct. See, e.g., *United States* v. *Walker*, 254 Fed. Appx. 60, 62–63 (2d Cir. 2007). This court has followed a similar approach. See, e.g., *State* v. *Sorabella*, 277 Conn. 155, 206–207, 891 A.2d 897 (instruction not required when state charged promotion of obscene materials as course of conduct), cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006); *State* v. *Spigarolo*, 210 Conn. 359, 383, 391, 556 A.2d 112 (risk of injury), cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989).

Nevertheless, in the vast majority of cases, specific unanimity instructions will be advisable when the prosecutor charges multiple instances. Stated more directly, when the prosecutor opts to charge multiple instances, it would be "sound practice" for the trial court to give a specific unanimity instruction so as to protect the defendant's right to jury unanimity. *United*

State *v.* Douglas C.

cludes that the trial court should not have permitted course of conduct charging, either because the defendant's conduct cannot fairly be characterized as a single scheme or pattern under the statute at issue, or because the constitutional rights that underlie the rule against duplicity were not adequately secured, then the trial court's determination is subject to harmless error analysis.

In other words, then, the two primary differences between my approach and the majority's approach are these. First, the majority agrees with those courts that have concluded that only the *legislature* can sanction course of conduct charging, and it must indicate its intent to do so. Otherwise, course of conduct charging is constitutionally impermissible. By contrast, I agree with those courts that have held that, unless otherwise specified, the legislature presumptively leaves to the *prosecutor* the decision of whether course of conduct charging is appropriate in a given case. This prosecutorial discretion is not unbridled. It is subject to the discretionary judgment of the trial court as to whether course of conduct charging is fair and reasonable on the facts of a particular case.[4] The discretion of the

---

*States* v. *Natelli*, supra, 527 F.2d 325 (although specific unanimity instruction is not always required, charging multiple instances in one count without instruction runs risk of violating jury unanimity requirement). When the prosecutor has charged a course of conduct crime, the trial court may tailor the instruction so as to ensure jury unanimity under the facts and circumstances of the case. See, e.g., *United States* v. *Prieto*, 812 F.3d 6, 11–12 (1st Cir.), cert. denied, U.S. , 137 S. Ct. 127, 196 L. Ed. 2d 100 (2016); *United States* v. *Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981). Ultimately, though, I agree with the majority that the trial court's failure to give such an instruction in the present case did not run afoul of the sixth amendment.

[4] Compare, e.g., *United States* v. *Girard*, 601 F.2d 69, 72 (2d Cir.) (acts could reasonably be understood as part of single scheme), cert. denied, 444 U.S. 871, 100 S. Ct. 148, 62 L. Ed. 2d 96 (1979), with *United States* v. *Tanner*, 471 F.2d 128, 139 (7th Cir.) (acts could not be so charged), cert. denied, 409 U.S. 949, 93 S. Ct. 269, 34 L. Ed. 2d 220 (1972). *Tanner*, on which the majority relies, is an excellent example of a decision in which the prosecutors were deemed to have abused their discretion in charging a single course

State *v.* Douglas C.

prosecutor is cabined not only by the defendant's right to a unanimous jury, but also by the other constitutional considerations, such as due process concerns, that underlie the prohibition against duplicity.

At the same time, it is important to point out that prosecutorial discretion in charging is deeply entrenched in our state's jurisprudence. Connecticut has a long history of permitting prosecutors, who are constitutional officers with broad discretionary authority over charging,[5] to make these sorts of decisions.[6] The discretion *not* to charge multiple, substantially similar offenses as separate crimes, thereby exposing the defendant to

---

of conduct. Although the United States Court of Appeals for the Seventh Circuit emphasized the scope and importance of prosecutorial discretion in this area; see *United States* v. *Tanner*, supra, 138–39; the court held that it was an abuse of that discretion to charge, in a single count, multiple illegal acts of transporting explosives, when those acts were committed by different defendants over the course of four months. See id., 139. Although the majority is correct that the court in *Tanner* considered the breadth of the statutory language, it ultimately resolved the case by indicating that, as the Ninth Circuit held in *Cohen* v. *United States*, 378 F.2d 751, 754 (9th Cir.), cert. denied, 389 U.S. 897, 88 S. Ct. 217, 19 L. Ed. 2d 215 (1967), which was not a statutory interpretation case, the government has discretion—albeit cabined discretion—in determining whether to charge a series of violations as a single scheme. See *United States* v. *Tanner*, supra, 138–39.

[5] See, e.g., Conn. Const., amend. XXIII; General Statutes § 51-277 (a); *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 563, 574–76, 663 A.2d 317 (1995).

[6] As I explain in part I B of this opinion, Connecticut prosecutors have been charging crimes as continuing offenses since the nineteenth century, long before the adoption of the state constitution in 1965, and they have been exercising their discretion to charge crimes such as sexual assault, which are not inherently or even primarily ongoing crimes, as course of conduct crimes for more than seventy years. I agree with the majority that prosecutors' authority to charge in this manner is not *expressly* conferred by any constitutional or statutory provision, and I do not mean to imply that it is the result of a constitutional grant of authority. It is, in my view, an ancient common-law pleading tradition, one that the legislature is well aware of and continues to implicitly approve. Nevertheless, I noted the authority conferred on Connecticut prosecutors by statute and the constitution because I believe that their discretion over course of conduct charging decisions is fully consistent with that broad authority.

State *v.* Douglas C.

multifold punishment, often redounds to the benefit of criminal defendants: their potential sentencing exposure is not as great, and the jury sees only one charged crime, rather than multiple, separate charges repeatedly alleging the same violation and thus suggesting that the defendant must be guilty if there are so many charges. Under the majority's new rule, in the vast majority of cases, when the legislature has neither sanctioned nor prohibited course of conduct charging, prosecutors would be stripped of this traditional authority.

This leads to the second primary difference between the majority's approach and the Second Circuit approach that I would adopt. Under the majority's approach, once it is determined that the state has charged the defendant with violating a single statute on multiple occasions and that each violation could have been charged separately, then the charge is duplicitous and, necessarily, a violation of the defendant's constitutional rights. That is, unless the legislature has signaled its assent to charging violations of a criminal statute as a course of conduct, such charging, in the absence of a bill of particulars or a specific unanimity instruction, necessarily offends the sixth amendment to the federal constitution and/or the corresponding provision of the state constitution. The majority then would conduct a harmless error analysis to determine whether the constitutional violation was harmless beyond a reasonable doubt. By contrast, if the legislature *has* sanctioned course of conduct charging, then the prosecutor can permissibly so charge, and the majority's approach appears to stop there—because there is no constitutional violation to such a charge— and there is no further evaluation of whether the defendant's right to a unanimous jury might nevertheless be infringed by charging multiple violations of a single statute in one count. Put differently, application of the majority's adopted test not only would prohibit course of conduct charging in cases in which it may be war-

State *v.* Douglas C.

ranted, but also may permit it in cases in which it could be unconstitutional.

The approach I favor does not reach a constitutional violation—or discount the possibility of one—as quickly. The approach I favor recognizes, as I discuss in part I A of this opinion, that there is an important distinction between a duplicitous *charge*, which potentially violates the rules of criminal procedure, and a *conviction* that violates the defendant's rights to due process or to a unanimous jury verdict. As many of the federal courts and our sister state courts have recognized, not all duplicitous charges run afoul of the constitution. The duplicity determination is the beginning of the determination of whether a criminal defendant's constitutional rights have been violated, not the end.

In the present case, I would affirm the defendant's conviction because charging each alleged crime as an ongoing course of conduct involved a reasonable exercise of prosecutorial discretion that did not infringe on the defendant's constitutional rights, and not because the legislature specifically identified § 53-21 (a) (2) as a course of conduct crime. It did not. See part II of this opinion.

A

There is one point that I should make clear at the outset because it is key to understanding all of the varied case law about these issues. That is, there is an important conceptual distinction between (1) duplicitous charging in an indictment or information and (2) the constitutional right to a unanimous jury verdict. The prohibition against duplicitous charging, which arose in the civil context at common law; see part I B of this opinion; rests in the rules of criminal procedure: Practice Book § 36-21 in Connecticut,[7] rule 8 (a) of

_____

[7] Practice Book § 36-21 provides: "Two or more offenses may be charged in the same information *in a separate count for each offense* for any defendant." (Emphasis added.)

State *v.* Douglas C.

the Federal Rules of Criminal Procedure in the federal courts,[8] and other rules in other states.[9] These rules of practice differ from one jurisdiction to the next, which means that cases construing and applying one jurisdiction's rules are not necessarily directly applicable to another jurisdiction.

The prohibition embodied in these rules, however, *is* grounded in several constitutional protections, one of which is the defendant's right to a unanimous jury verdict. This right is principally secured by the sixth amendment to the federal constitution, as well as by article first, §§ 8 and 19, of the Connecticut constitution.[10] As I will discuss, different federal courts treat differently the relationship between the rule against duplicitous charging and the sixth (and other) amendment rights that underlie that rule. Some deem any violation of the procedural rules against duplicitous charging also to be a per se constitutional violation but then hold that violation harmless if, in fact, the violation was cured by the trial court's giving a specific unanimity instruction or if such an instruction is deemed unnecessary.

Other courts, though, follow the conceptually distinct approach that I favor. They treat violations of the rules

---

[8] Rule 8 (a) of the Federal Rules of Criminal Procedure provides: "The indictment or information may charge a defendant *in separate counts* with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." (Emphasis added.) It has been broadly accepted, however, that charging a course of conduct crime in a single count does not violate the rule. See, e.g., *United States* v. *Conlon*, 661 F.2d 235, 239 (D.C. Cir. 1981) ("[p]erusal of many cases in which error was predicated on the duplicity of an indictment reveals that an exception [to rule 8 (a)] exists for a continuing scheme or a course of conduct [that] violates but one criminal statutory provision"), cert. denied, 454 U.S. 1149, 102 S. Ct. 1015, 71 L. Ed. 2d 304 (1982).

[9] See, e.g., N.Y. Crim. Proc. Law § 200.30 (1) (McKinney 2007).

[10] As the majority points out, the defendant has not separately briefed a state constitutional claim before this court. See footnote 5 of the majority opinion.

State *v.* Douglas C.

of practice and of the constitution as different—albeit related—matters.[11] The cure for a violation of the rules against duplicitous pleading is, typically, reformulation of the indictment, a bill of particulars, and/or appropriate jury instructions, not reversal of the conviction.[12] A sixth amendment violation, by contrast, will warrant reversal if it is not deemed harmless.

B

Before I discuss the Second Circuit approach, which I would adopt, a brief history of these issues may be instructive. The rules against duplicity (pleading multi-

---

[11] See, e.g., *United States* v. *Jaynes*, 75 F.3d 1493, 1502 n.7 (10th Cir. 1996); see also, e.g., *United States* v. *Correa-Ventura*, 6 F.3d 1070, 1081 (5th Cir. 1993) ("[T]he issues of duplicity and unanimity are evaluated at different procedural stages of the criminal proceedings—duplicity is generally reviewed during the pretrial phase, whereas unanimity must be determined after all the evidence has been introduced at trial. For this reason, the inquiry as to whether offenses are distinct for purposes of duplicity is not identical to the analysis employed in determining whether the actions charged are so dissimilar that unanimity is required."); *Lane* v. *Graham*, Docket No. 9:14-cv-01261-JKS, 2016 WL 154111, *10 (N.D.N.Y. January 12, 2016) ("[T]he [United States] Supreme Court has never held that an indictment containing duplicitous counts violates the [d]ue [p]rocess [c]lause. . . . The Second Circuit has further indicated that duplicitous pleadings are not even presumptively invalid in and of themselves." (Citation omitted.)); *Jones* v. *Lee*, Docket No. 10 Civ. 7915 (SAS), 2013 WL 3514436, *7 (S.D.N.Y. July 12, 2013) ("Procedural rules create the prohibition of duplicitous counts—there is no constitutional right against duplicity per se. . . . However, a duplicitous count may violate a defendant's constitutional rights . . . if it violates the [s]ixth [amendment] . . . ." (Footnotes omitted; internal quotation marks omitted.)), appeal dismissed, United States Court of Appeals for the Second Circuit, Docket No. 13-2970 (October 26, 2013).

[12] See, e.g., *United States* v. *Ramirez-Martinez*, 273 F.3d 903, 915 (9th Cir. 2001) ("[t]he rules about . . . duplicity are pleading rules, the violation of which is not fatal to an indictment" (internal quotation marks omitted)) (overruled on other grounds by *United States* v. *Lopez*, 484 F.3d 1186 (9th Cir. 2007)), cert. denied, 537 U.S. 930, 123 S. Ct. 330, 154 L. Ed. 2d 226 (2002); *United States* v. *Droms*, 566 F.2d 361, 363 n.1 (2d Cir. 1977) ("[d]uplicity, of course, is only a pleading rule and would in no event be fatal to the count"); *Reno* v. *United States*, 317 F.2d 499, 502 (5th Cir.) ("[d]uplicity is not a fatal defect" (internal quotation marks omitted)), cert. denied, 375 U.S. 828, 84 S. Ct. 72, 11 L. Ed. 2d 60 (1963).

State *v.* Douglas C.

ple grounds or offenses in the same count) and multiplicity (pleading the same ground or offense in multiple counts) originated at English common law, in the civil pleading context. See E. Coke, First Part of the Institutes of the Lawes of England (1628) p. 304. An exception to Coke's rule against duplicity came to be recognized for continuing torts, such as ongoing trespass; for those claims, the plaintiff could "[lay] the action with a continuando" (another way of saying continuous course), alleging in a single count that, for example, the defendant had trespassed continually— on a particular date and on "divers days" thereafter. 3 W. Blackstone, Commentaries on the Laws of England (1768) p. 212. In the nineteenth century, the new American states were divided over how to apply these common-law civil rules to criminal prosecutions. Some, including Connecticut, allowed the state to lay a broad range of vice-type and scheme-type crimes with a continuando, charging repeated violations as one continuing offense or continuing course of conduct, whereas other states rejected the practice.[13]

Early on, Connecticut courts recognized that not all crimes are either exclusively individual act or course of conduct crimes. Some crimes that were not inherently continuing offenses could be charged either as individual acts or with a continuando. See, e.g., *State* v. *Cook*, 75 Conn. 267, 268, 53 A. 589 (1902) (prosecutor charged

---

[13] Compare *State* v. *Bosworth*, 54 Conn. 1, 2, 4 A. 248 (1886) ("all offenses involving continuous action, and which may be continued from day to day, may be so alleged"), and *Commonwealth* v. *Pray*, 30 Mass. 359, 362 (1833) ("[whenever] the crime consists of a series of acts, they need not be specially described, for it is not each or all the acts of themselves, but the practice or habit which produces the principal evil and constitutes the crime" (emphasis omitted)), with *State* v. *Munger*, 15 Vt. 290, 296–97 (1843) (continuando must be disregarded as "surplusage").

I do not suggest that *Bosworth* stood for the proposition that any crime can be charged by continuando, only that Connecticut has long taken a more expansive approach than have some other states to course of conduct charging.

State *v.* Douglas C.

cruelty to animals both as individual infraction and with continuando covering three month period). Child sexual assault is one common example of a crime the charging of which traditionally has been subject to prosecutorial discretion, both before and after the enactment of § 1-2z. In fact, Connecticut prosecutors have consistently charged child sexual assault, along with risk of injury to a child, as a continuing offense. This has been equally true when the victims provided only generic testimony as to an ongoing, undifferentiated pattern of abuse, when they testified in detail as to a number of specific assaults that were jointly charged in a single count, and when the testimony included a blend of the specific and the generic.[14]

[14] See, e.g., *State* v. *Silver*, 139 Conn. 234, 247, 93 A.2d 154 (1952) (*O'Sullivan, J.*, concurring) (state charged that, " 'at the [c]ity of Hartford on divers dates, the [defendant] did commit an indecent assault [on] a minor' "); *State* v. *Saraceno*, 15 Conn. App. 222, 225 n.1, 229, 545 A.2d 1116 (finding no constitutional violation when state charged defendant with committing second degree sexual assault against minor by intercourse " 'on divers uncertain dates, primarily on weekends, between August 1980 and August 1983,' " because "[e]ach count, although alleging repeated commissions of a crime, charged only a single set of essential elements comprising the offense"), cert. denied, 209 Conn. 823, 552 A.2d 431 (1988), and cert. denied, 209 Conn. 824, 552 A.2d 432 (1988); *State* v. *Mancinone*, 15 Conn. App. 251, 256 n.5, 545 A.2d 1131 (state charged second degree sexual assault, by intercourse with minors, " 'on divers dates between August 1983 and November 1984' "), cert. denied, 209 Conn. 818, 551 A.2d 757 (1988), cert. denied, 489 U.S. 1017, 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989); *State* v. *Snook*, 210 Conn. 244, 265, 555 A.2d 390 (state charged second and third degree sexual assault when defendant engaged in sexual intercourse with victim "on 'divers days between June, 1979, and January, 1984' "), cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989); *State* v. *Osborn*, 41 Conn. App. 287, 295, 676 A.2d 399 (1996) (charging attempted first degree sexual assault of child "on diverse dates between June 20, 1986, and June 20, 1991"); *State* v. *Vumback*, 263 Conn. 215, 217, 219, 819 A.2d 250 (2003) (charging first and third degree sexual assault of child, as well as risk of injury to child, "on divers dates between approximately June, 1990 through July, 1996" (internal quotation marks omitted)); *State* v. *William B.*, 76 Conn. App. 730, 735, 822 A.2d 265 (in addition to risk of injury, state charged defendant with first degree sexual assault, specifically alleging that, "on divers dates between 1990 and 1994, *as a continuing course of conduct*, the defendant engaged in sexual intercourse with the victim, who was younger than thir-

State *v.* Douglas C.

## C

With this history in mind, I turn to the law of the Second Circuit on duplicity and course of conduct charging. Although the groundwork was laid in earlier

teen'' (emphasis added)), cert. denied, 264 Conn. 918, 828 A.2d 618 (2003); *State* v. *Romero*, 269 Conn. 481, 483–84, 504, 849 A.2d 760 (2004) (state charged that first degree sexual assaults of ten year old boy took place '' 'on diverse dates between October, 1999 [and] March, 2000' ''); *State* v. *Marcelino S.*, 118 Conn. App. 589, 593, 984 A.2d 1148 (2009) (state charged fourth degree sexual assault of child and risk of injury to child "on divers dates, between August 2003 and April 2005" (emphasis omitted; internal quotation marks omitted)), cert. denied, 295 Conn. 904, 988 A.2d 879 (2010); *State* v. *Jessie L. C.*, 148 Conn. App. 216, 218–19, 227, 231, 84 A.3d 936 (state charged defendant with second and fourth degree sexual assault '' 'on diverse dates between' '' 2002 and July of 2009, after complainant "gave a detailed account of several specific incidents of sexual assault" and, in addition, alleged that defendant assaulted her two to three times per week at ages eleven and twelve, and at least daily between ages of thirteen and sixteen, under at least eleven different factual scenarios, encompassing approximately 7575 distinct incidents of abuse), cert. denied, 311 Conn. 937, 88 A.3d 551 (2014); *State* v. *Vere C.*, 152 Conn. App. 486, 508–10, 98 A.3d 884 (charging first degree sexual assault, as well as risk of injury to child, '' 'on diverse dates between' '' 2005 and 2010 based on allegations that defendant assaulted victim approximately ten times, in different residences and different physical positions), cert. denied, 314 Conn. 944, 102 A.3d 1116 (2014); *State* v. *Michael D.*, 153 Conn. App. 296, 303, 322, 101 A.3d 298 (state charged first degree sexual assault and risk of injury to child, basing each charge on three different assaults of child, over three year period, each of which was factually distinct), cert. denied, 314 Conn. 951, 103 A.3d 978 (2014); *State* v. *Joseph V.*, 196 Conn. App. 712, 733, 230 A.3d 644 (2020) (see companion case, *State* v. *Joseph V.*, 345 Conn. 516, 534, 539,      A.3d      (2022)).

The majority's view, apparently, is that this practice, which is founded in ancient common law and has been memorialized in our state's published appellate decisions for more than seventy years, has always been impermissible under (unstated) Connecticut law, but that the legislature has simply never addressed the rogue charging practice. The majority places it in the same category as unpublished trial court decisions and municipal zoning regulations, which fly below the legislature's radar. The more reasonable explanation, I would submit, is that the legislature, which is presumed to be aware of the published decisions of this court and the Appellate Court, is well aware of the practice and has opted not to abrogate the common law and to undermine the state's ability to prosecute resident child molesters. Cf. *Pacific Ins. Co.*, *Ltd.* v. *Champion Steel, LLC*, 323 Conn. 254, 264, 146 A.3d 975 (2016) ("if the legislature wishes to abrogate the common law, it must do so expressly").

State *v.* Douglas C.

cases, the Second Circuit's approach to duplicitous charging generally is traced to Judge Jon O. Newman's majority opinion in *United States* v. *Margiotta*, 646 F.2d 729 (2d Cir. 1981). In *Margiotta*, the government charged the defendant with sending " 'countless' " mailings, each in violation of the federal mail fraud statute, 18 U.S.C. § 1341 (1976), over a ten year period. Id., 730–31. The trial court declined to allow the government to charge multiple violations in a single count, and the Second Circuit permitted an interlocutory appeal. See id., 731. The Second Circuit agreed with the defendant that each mailing would have provided a "discrete basis for the imposition of criminal liability"; (internal quotation marks omitted) id., 732; but saw nothing improper with the government instead charging the mailings as one course of conduct when "the essence of the alleged wrong [was] the single scheme to defraud . . . ." Id., 733. In reaching this conclusion, the court never quoted the language of the statute; nor did it suggest that Congress intended the statute to be charged as a course of conduct crime. Rather, it relied on the general principle that, "[i]f the doctrine of duplicity is to be more than an exercise in mere formalism, it must be invoked only when an indictment affects the policy considerations that underlie that doctrine." (Internal quotation marks omitted.) Id., 732–33.[15]

The Second Circuit acknowledged that some courts, such as the United States Court of Appeals for the Fifth Circuit, follow the approach that any acts that qualify as

_____

[15] Contrary to the majority's suggestion, I am fully aware that 18 U.S.C. § 1341 (1976) prohibits the use of the mailings in connection with a "scheme or artifice to defraud," and, therefore, it might be argued that the language of the statute itself contemplates course of conduct charging. As I discuss hereinafter, the Second Circuit and other courts following *Margiotta* have subsequently applied the same framework in the absence of any clear manifestation of legislative approval or intent, even in cases in which the statutory language does not prohibit or envision a course of conduct. See footnotes 18 and 25 of this opinion.

State *v.* Douglas C.

separate offenses must be charged in separate counts, unless the legislature has authorized otherwise. See id., 733. This is the approach that the majority has adopted in the present case. The Second Circuit rejected that approach, however, concluding that "a single count of an indictment should not be found impermissibly duplicitous whenever it contains several allegations that could have been stated as separate offenses . . . but only when the failure to do so risks unfairness to the defendant." (Citation omitted.) Id.

The Second Circuit court in *Margiotta* further concluded that there was no risk of unfairness to the defendant in that case; quite the contrary. Charging all of the illegal mailings in one count, rather than in dozens of separate counts, benefitted the defendant by "limiting the maximum penalties [the] defendant [could] face if convicted of mail fraud and also [by] avoid[ing] the unfairness of portraying the defendant to the jury as the perpetrator of [fifty] crimes." Id.; see also, e.g., *United States* v. *Walker*, 254 Fed. Appx. 60, 62 (2d Cir. 2007) ("[t]he law does not . . . absolutely proscribe duplicitous pleading because it recognizes that such an inflexible rule could inure to defendants' detriment by requir-[ing] exposure to cumulative punishments" (internal quotation marks omitted)); *State* v. *Stanley*, 161 Conn. App. 10, 12–14, 125 A.3d 1078 (2015) (defendant was convicted of 100 counts of criminal violation of protective order and, accordingly, sentenced to eighteen years of imprisonment for making repeated phone calls to former romantic partner), cert. denied, 320 Conn. 918, 131 A.3d 1154 (2016). Finally, the court suggested that it would not be error to give the jury an instruction charging only that the jury must unanimously find that the defendant mailed at least one item in furtherance of his scheme to defraud, although the Second Circuit observed that it would not be improper for the trial court to submit a special interrogatory to identify one or

State *v.* Douglas C.

more specific mailings. See *United States* v. *Margiotta*, supra, 646 F.2d 733.

1

In decisions both prior and subsequent to *Margiotta*, the Second Circuit has clarified several aspects of its duplicitous charging jurisprudence. First, in *Margiotta*, the essence of the alleged crime was the defendant's insurance fraud scheme, and the multiple mailings were relevant mostly because they provided the basis for federal jurisdiction. See id. Subsequent decisions have made clear that *Margiotta* applies even when the distinct violations "are an inherent part of the alleged wrong" and not merely jurisdictional prerequisites. (Internal quotation marks omitted.) *United States* v. *Upton*, 856 F. Supp. 727, 741–42 (E.D.N.Y. 1994).

Second, it is now clear that, unless the legislature clearly directs otherwise, whether violations of a given criminal statute may be charged as a course of conduct in a given case is a matter of prosecutorial discretion.[16] The Second Circuit and the district courts in that circuit have permitted duplicitous charging under a broad array of federal criminal statutes that do not facially contemplate course of conduct charging, and, in some instances, they have done so without any discussion[17] of whether Congress intended to permit such charging under the statute.[18] These courts have emphasized that,

---

[16] Of course, if a statute expressly barred course of conduct charging, then that legislative determination would be binding. Rarely, however, is that the case.

[17] I underscored some federal cases that permit course of conduct charging without first analyzing the statutory language. The point of these cases is not that the statutory language is irrelevant, or that statutory analysis is not appropriate. The point is simply that a statute that is facially silent as to course of conduct charging presumptively permits it. In Connecticut, we still may need to go through the legislative history in order to ascertain legislative intent.

[18] See, e.g., *United States* v. *Anson*, 304 Fed. Appx. 1, 4 (2d Cir. 2008) (transportation and receipt of child pornography, in violation of 18 U.S.C. § 2252A), cert. denied, 556 U.S. 1160, 129 S. Ct. 1687, 173 L. Ed. 2d 1050 (2009); *United States* v. *Tutino*, 883 F.2d 1125, 1128, 1141 (2d Cir. 1989)

State *v.* Douglas C.

"under the law of [the Second] Circuit, acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme"; (internal quotation marks omitted) *United States* v. *Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992); and that the decision whether to so charge is a matter of prosecutorial discretion.[19] In *United States* v. *Moloney*, 287 F.3d 236 (2d Cir.), cert. denied, 537 U.S. 951, 123 S. Ct. 416, 154 L. Ed. 2d 297 (2002), the Second Circuit specifically rejected the view that an indictment that charges a continuing offense not expressly prohibited by Congress fails to charge a cognizable offense. See id., 240–

---

(distribution of heroin, in violation of 21 U.S.C. § 841), cert. denied, 493 U.S. 1081, 110 S. Ct. 1139, 107 L. Ed. 2d 1044 (1990), and cert. denied sub nom. *Guarino* v. *United States*, 493 U.S. 1082, 110 S. Ct. 1139, 107 L. Ed. 2d 1044 (1990); *United States* v. *Girard*, 601 F.2d 69, 70, 72 (2d Cir.) (unauthorized sale of government property, in violation of 18 U.S.C. § 641), cert. denied, 444 U.S. 871, 100 S. Ct. 148, 62 L. Ed. 2d 96 (1979); *United States* v. *Natelli*, 527 F.2d 311, 314, 325 (2d Cir. 1975) (making material false and misleading statements in Securities and Exchange Commission proxy statement, in violation of 15 U.S.C. § 78ff (a)), cert. denied, 425 U.S. 934, 96 S. Ct. 1663, 48 L. Ed. 2d 175 (1976); *Lindsey* v. *Heath*, Docket No. 12-CV-2150 (ERK), 2015 WL 3849939, *1, *3 (E.D.N.Y. June 22, 2015) (burglary, in violation of New York law); *United States* v. *Jordan*, Docket No. 08-CR-124 (DLC), 2009 WL 2999753, *6 (S.D.N.Y. August 21, 2009) (communicating kidnapping threats, in violation of 18 U.S.C. § 875 (c)); *United States* v. *Sattar*, 272 F. Supp. 2d 348, 353, 382 (S.D.N.Y. 2003) (providing support to foreign terrorist organization, in violation of 18 U.S.C. § 2339B); *United States* v. *Martino*, Docket No. S1-00-CR-389 (RCC), 2000 WL 1843233, *2, *4 (S.D.N.Y. December 14, 2000) (tax evasion and subscribing to false returns, in violation of 26 U.S.C. §§ 7201 and 7206); *United States* v. *Gordon*, 990 F. Supp. 171, 177–78 (E.D.N.Y. 1998) (money laundering, in violation of 18 U.S.C. § 1956); *United States* v. *Mango*, Docket No. 96-CR-327, 1997 WL 222367, *1, *6 (N.D.N.Y. May 1, 1997) (violation of permit requirements imposed by Clean Water Act, 33 U.S.C. § 1319); *United States* v. *Weissman*, Docket No. S2-94-CR-760 (CSH), 1996 WL 742844, *1, *25–26 (S.D.N.Y. December 20, 1996) (obstruction of justice, in violation of 18 U.S.C. § 1505).

[19] See, e.g., *United States* v. *Mango*, Docket No. 96-CR-327, 1997 WL 222367, *6 (N.D.N.Y. May 1, 1997) ("Certainly, each violation . . . could have been charged in a separate count. However, under the law of [the Second] Circuit, the United States need not do so if it chooses a reasonable method of aggregating the offenses charged.").

State *v.* Douglas C.

41. The court concluded, rather, that violations of *any* criminal statute can be charged as a course of conduct, in the prosecutor's discretion, so long as the conduct reasonably can be characterized as part of a common scheme. See id., 240 ("[i]n response to certain claims of duplicity, [the Second] [C]ircuit has adopted *a general rule* that criminal charges may aggregate multiple individual actions that otherwise could be charged as discrete offenses as long as all of the actions are part of a single scheme" (emphasis added; internal quotation marks omitted)); see also, e.g., S. Levy, Federal Money Laundering Regulation: Banking, Corporate & Securities Compliance (Supp. 2022) § 20.05, p. 20-16 (Second Circuit follows "[u]nified [s]cheme [r]ule"). For this reason, "courts in [the Second] Circuit have repeatedly denied motions to dismiss a count as duplicitous." *United States* v. *Ohle*, 678 F. Supp. 2d 215, 222 (S.D.N.Y. 2010).

Of particular relevance to the present appeal, district courts in the Second Circuit have applied these principles to indictments alleging the sexual abuse of minors, allowing prosecutors to charge a course of conduct even when there was no indication that Congress specifically intended the statutes at issue to be charged in that manner. For example, in *United States* v. *Vickers*, Docket No. 13-CR-128-A, 2014 WL 1838255 (W.D.N.Y. May 8, 2014), the court upheld the validity of a single count indictment charging the defendant, a truck driver, with having transported a minor across state lines to engage in illegal sexual activity on multiple dates between 2000 and 2004, in violation of 18 U.S.C. § 2423 (a). See id., *1–2, *7. The victim told investigators that the defendant had taken him on approximately fifty such trips, for only a few of which could he provide details of the dates, locations, and abuse involved. See id., *2, *4. Applying *Margiotta* and its progeny, the court in *Vickers* concluded that the indictment was not impermissibly duplicitous because the government alleged a

State *v.* Douglas C.

continuing scheme to transport the victim for illicit sexual purposes. Id., *7.

Third, the Second Circuit has elucidated the process by which courts should determine, on a case-by-case basis, whether duplicitous course of conduct charging represents an abuse of prosecutorial discretion. If a trial court determines that the series of offenses in question can fairly and reasonably be characterized as a cohesive scheme or single course of conduct; see footnote 4 and part I C 2 of this opinion; the court must then consider whether charging the offenses in a single count comports with due process. In *United States* v. *Olmeda*, 461 F.3d 271 (2d Cir. 2006), the Second Circuit explained that "[d]uplicitous pleading . . . is not presumptively invalid" but, rather, is objectionable "only when [the] challenged indictment affects [the] doctrine's underlying policy concerns . . . ." Id., 281. The constitutional/policy considerations that speak to whether course of conduct charging is appropriate include "(1) avoiding [the] uncertainty of [a] general guilty verdict by concealing [a] finding of guilty as to one crime and not guilty as to [an]other, (2) avoiding [the] risk that jurors may not have been unanimous as to any one of the crimes charged, (3) assuring [the] defendant adequate notice of charged crimes, (4) providing [a] basis for appropriate sentencing, and (5) providing adequate protection against double jeopardy in subsequent prosecution[s] . . . ." Id.

2

There is one ambiguity in the Second Circuit approach that warrants special attention. That court has, in different instances, given the seemingly paradoxical guidance that (1) course of conduct charging should be permitted by the trial court only when it would not offend the sixth amendment right to a unanimous jury verdict; see, e.g., id.; but (2) when the prosecutor

State *v.* Douglas C.

charges a course of conduct, jury unanimity is not a concern because the jury need only agree that the defendant has committed the charged crime, which is the course of conduct. See, e.g., *United States* v. *Walker*, supra, 254 Fed. Appx. 62–63. This raises the question of when and how a trial court is to determine whether course of conduct charging is proper in a particular case.

The solution to this enigma, the Second Circuit has suggested, is that multiple violations of a statute can reasonably and constitutionally be charged in a single count when the course of conduct forms the "essence" of the alleged criminality. See, e.g., id.; *United States* v. *Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989), cert. denied, 493 U.S. 1081, 110 S. Ct. 1139, 107 L. Ed. 2d 1044 (1990), and cert. denied sub nom. *Guarino* v. *United States*, 493 U.S. 1082, 110 S. Ct. 1139, 107 L. Ed. 2d 1044 (1990); see also, e.g., *United States* v. *Tawik*, 391 Fed. Appx. 94, 97 (2d Cir. 2010) ("[a]s long as the essence of the alleged crime is carrying out a single scheme . . . then aggregation is permissible" (internal quotation marks omitted)). When the statutory language is silent on the issue, courts that follow *Margiotta* consider the following nonexhaustive list of factors when evaluating the essence of the allegations against the defendant: whether the alleged instances of misconduct involved the same defendants, the same victims, the same (or similar) conduct, at the same location, inspired by the same motive or purpose; whether the misconduct took place over a relatively short period of time or occurred frequently and more or less regularly over a longer period of time; whether the individual instances of misconduct can properly and reasonably be characterized as part of a common scheme or plan; whether there is considerable generic trial testimony and other evidence that is focused on the overall course of misconduct rather than on specific instances; whether

State *v.* Douglas C.

the individual instances of misconduct were interrelated or interdependent; whether the individual instances were not subject to unique defenses or types of proof; whether charging each alleged violation as a separate count would unnecessarily cumulate charges and potential criminal liability or render prosecution impracticable; whether a juror reasonably could consider the individual instances alleged to be incidental as merely means of accomplishing the overarching criminal design; and whether the crime is one that frequently is committed as part of a repetitive pattern or scheme and that historically has been understood and charged as a course of conduct.

When most of these factors indicate that the essence of the charged crime is the pattern of misconduct, rather than a few individual instances thereof, then it will be reasonable to think of the course of conduct as the crime at issue, and the sixth amendment does not require juror unanimity as to any particular instance. See, e.g., *United States* v. *Davis*, 471 F.3d 783, 790–91 (7th Cir. 2006); *United States* v. *Moloney*, supra, 287 F.3d 241; *Commonwealth* v. *Casbohm*, 94 Mass. App. 613, 619–21, 116 N.E.3d 633 (2018), review denied, 484 Mass. 1101, 141 N.E.3d 910 (2020); *State* v. *Rucker*, 752 N.W.2d 538, 548 (Minn. App. 2008), review denied, 2008 Minn. LEXIS 508 (Minn. September 23, 2008).

D

The Second Circuit thus takes a flexible approach to duplicitous charging, affording the prosecutor the discretion to charge a course of conduct when that reasonably comports with the facts of the case and does not conflict with the stated intent of the legislature, and then addressing any potential constitutional concerns pragmatically, on a case-by-case basis. I agree with that approach. As I noted, to the extent that the law of duplicity encompasses federal constitutional

State *v.* Douglas C.

considerations, this court gives decisions of the Second Circuit "particularly persuasive weight in the resolution of issues of federal law . . . ."[20] (Internal quotation marks omitted.) *St. Juste* v. *Commissioner of Correction*, 328 Conn. 198, 210, 177 A.3d 1144 (2018). As I subsequently discuss, I disagree with the majority's contention that "the great weight of federal jurisprudence conflicts with [the views of the Second Circuit in this respect]." (Internal quotation marks omitted.) Part I C of the majority opinion.

I also believe that the Second Circuit approach is fully consistent with Connecticut law; the federal and state constitutions and rules of pleading have comparable provisions, and, although Connecticut has codified the plain meaning rule; see General Statutes § 1-2z; the federal courts of appeals—including the Second Circuit—follow essentially that same rule when they construe statutes. See, e.g., *Springfield Hospital, Inc.* v. *Guzman*, 28 F.4th 403, 422 (2d Cir. 2022). Indeed, they are bound to do so. See, e.g., *Barnhart* v. *Sigmon Coal Co.*, 534 U.S. 438, 450, 122 S. Ct. 941, 151 L. Ed. 2d 908 (2002).

Of course, I agree that the legislature always, ultimately, has the authority to dictate how a criminal stat-

---

[20] Notably, the Appellate Court has, on at least one occasion, adopted the Second Circuit approach and permitted course of conduct charging in the context of a sexual assault charge. See *State* v. *Saraceno*, 15 Conn. App. 222, 228–32, 545 A.2d 1116, cert. denied, 209 Conn. 823, 552 A.2d 431 (1988), and cert. denied, 209 Conn. 824, 552 A.2d 432 (1988). I disagree with the majority's contention that *Saraceno* is not relevant authority merely because this court had not yet formally articulated a jurisprudence of unanimity as to instances. It seems clear to me that, in *Saraceno*, the Appellate Court adopted the Second Circuit's approach to duplicity because it relied on the same federal cases that I would follow, such as *United States* v. *Margiotta*, supra, 646 F.2d 733, and *United States* v. *Shorter*, 608 F. Supp. 871, 879–80 (D.D.C. 1985), aff'd, 809 F.2d 54 (D.C. Cir.), cert. denied, 484 U.S. 817, 108 S. Ct. 71, 98 L. Ed. 2d 35 (1987), as well as the decision of this court in *State* v. *Bosworth*, 54 Conn. 1, 2, 4 A. 248 (1886). See *State* v. *Saraceno*, supra, 228–31. Indeed, the majority quotes *Saraceno* at some length as an accurate statement of the governing law.

State *v.* Douglas C.

ute may be applied. Under § 1-2z, if the legislature expressly defines a course of conduct crime, or makes clear its intent in the legislative history, then there is no question that it may—or, more likely, must—be so charged.[21] If the legislature expressly prohibits such charging, then it is not permissible.[22] The legislature's authority to make that determination is not in dispute under the Second Circuit approach. See, e.g., *United States* v. *Moloney*, supra, 287 F.3d 240.

The issue before us is how to proceed in the vast majority of cases, when the legislature has left the question open, neither expressly permitting or requiring nor expressly prohibiting course of conduct charging on the face of the statute. I agree with the majority that the legislative history, if it manifests a clear intent one way or the other, also can be dispositive in this regard. In most instances, however, there is no reason to think that legislators even considered the question of course of conduct charging when enacting any particular statute, let alone decided to prohibit such charging. As we have recently observed, "[o]ften the inquiry [into the allowable unit of prosecution] produces few if any enlightening results. Normally these are not problems that receive explicit legislative consideration."[23] (Inter-

---

[21] See, e.g., General Statutes § 53a-181d (b) (1) and (2) (stalking in second degree); see also, e.g., General Statutes § 53-142k (b) (1) (organized retail theft).

[22] When courts and commentators provide examples of that type of law, they often point to statutes that impose a distinct penalty for each day that the statute is violated. A Connecticut statute of this kind would be General Statutes § 15-173, which, for docking violations, imposes a daily fine of up to $10,000 (or $25,000 for first violations committed wilfully or with criminal negligence, and $50,000 for subsequent criminal violations); see General Statutes § 15-173 (b) and (c); and provides expressly that "[e]ach violation shall be a separate and distinct offense, and, in the case of a continuing violation, each day's continuance thereof shall be deemed to be a separate and distinct offense." General Statutes § 15-173 (b). Another statute that uses essentially the same language is General Statutes § 22a-226 (a) (governing civil violations of solid waste management law).

[23] Contrary to the majority's suggestion, I would not require any "talismanic" use of language such as "continuous course of conduct" or "each

State *v.* Douglas C.

nal quotation marks omitted.) *State* v. *Ruiz-Pacheco*, 336 Conn. 219, 236 n.12, 244 A.3d 908 (2020).

The majority relies on cases such as *State* v. *Cody M.*, 337 Conn. 92, 102–103, 106, 259 A.3d 576 (2020), for the proposition that Connecticut does not apply a general presumption that a prosecutor has the discretion to charge a crime as a continuing course of conduct. Of course, until now, we have not had cause to discuss any such general presumption because, as the majority emphasizes, until today, this court did not recognize duplicity challenges based on unanimity of instances. There was no need or reason to clarify the scope of an exception to a rule that did not exist.

More important, though, cases such as *Ruiz-Pacheco* and *Cody M.* involved the issue of multiplicity, an entirely different legal question.[24] As noted, pleadings can be challenged both for duplicity (charging multiple offenses in one count) and for multiplicity (charging one offense in multiple counts). As I discuss in my concurring and dissenting opinion in *State* v. *Joseph V.*, 345 Conn. 516, 591–92, A.3d (2022) (*Mullins, J.*, concurring in part and dissenting in part), when, as in *State* v. *Cody M.*, supra, 337 Conn. 96–97, a defendant commits a series of acts against a victim on one occasion, and the state charges the series of acts as multiple, distinct crimes, the court must determine the permissi-

single act'' by the legislature before concluding that it had spoken definitively to these issues. (Internal quotation marks omitted.) Part II of the majority opinion. The majority, however, goes to the opposite extreme, perceiving meanings and restrictions in the legislative language for which there is simply no textual support.

[24] Although the majority is correct that this court did not find that any presumption was applicable in *Cody M.*, in light of the clear statutory language, this court has applied a presumption in favor of continuous course of conduct charging in closely related cases, such as *Ruiz-Pacheco*. See *State* v. *Ruiz-Pacheco*, supra, 336 Conn. 237 (''[a]pplying the rule of lenity here means interpreting assault to be a [course of conduct] offense'' (internal quotation marks omitted)).

State *v.* Douglas C.

ble minimum unit of prosecution. That is, we must determine whether the legislature intended to permit the state to charge each individual act as a distinct crime when the defendant contends that each act was merely part of one criminal episode. The answer to that question says nothing about the question before us in the present case and in *Joseph V.*, namely, whether the legislature intended to require that an ongoing series of violations, committed over many days, each be charged individually. That is a question that we have never addressed, and nothing in Connecticut law bars us from following the Second Circuit approach.

Contrary to the majority's approach, we must assume that legislators, when enacting a new criminal statute, are aware of our state's long history of affording prosecutors broad discretion in the charging of crimes such as child sexual assault as continuing courses of conduct; see footnote 14 of this opinion and accompanying text; and that they do not intend to intrude on or restrict that discretion, unless they clearly state so. Indeed, as I discuss in my concurring and dissenting opinion in *State* v. *Joseph V.*, supra, 345 Conn. 573–77 (*Mullins, J.*, concurring in part and dissenting in part), the fact that the legislature has, in certain instances, expressly provided either that a particular statute must be charged as a continuing offense; see, e.g., General Statutes § 53a-181d (b) (1) and (2); or that it must not be charged as a continuing offense; see, e.g., General Statutes § 15-173; strongly supports applying the Second Circuit presumption that other statutes, which are silent on the question, can be charged either way under appropriate circumstances. In short, when the legislature wishes to speak on the issue, one way or the other, it knows how to do so.

For all of these reasons, I would adopt the Second Circuit's approach to duplicity. It keeps the charging decision in the hands of the officers who are responsible

State *v.* Douglas C.

for that decision, the prosecutors, and preserves their
authority to bring charges in the manner most consis-
tent with the interests of justice and the facts and cir-
cumstances of the particular case. The rule that the
majority adopts today, by contrast, would undermine
prosecutors' well established role in the charging pro-
cess in a manner that the federal constitution does not
require and that our state legislature never mandated
or anticipated.

E

It is not only the Second Circuit that has declined to
follow the majority's approach. Although the majority
repeatedly contends that most federal courts of appeals
and " 'the great weight' " of federal authority support
its proposed framework, the truth is that at least five
other federal courts of appeals have relied on *Margiotta*
and embraced the Second Circuit framework, at least
in some instances. That is, they have permitted course
of conduct charging in the absence of any clear manifes-
tation of legislative intent, and they have recognized
that the charging decision falls within the discretion of
the prosecutor, so long as the charge is not unreason-
able and the defendant's fundamental rights are respected.[25]

[25] See, e.g., *United States* v. *Davis*, supra, 471 F.3d 790–91 ("[When] the
indictment fairly interpreted alleges a continuing course of conduct, during
a discrete period of time, the indictment is not prejudicially duplicitous.
. . . *The* [*charging*] *decision is left, at least initially, to the discretion of the
prosecution*." (Citation omitted; emphasis added; internal quotation marks
omitted.)); *United States* v. *Denton*, 146 Fed. Appx. 888, 890 (9th Cir. 2005)
(extortion indictment was not duplicitous, notwithstanding that defendant
made threats over course of fifty-five days, because threats were made
against single victim, pursuant to one plan, and dangers of duplicity were
not present); see also, e.g., *United States* v. *Kamalu*, 298 Fed. Appx. 251,
252 (4th Cir. 2008) (government permissibly charged corruptly obstructing
administration of Internal Revenue Code, on behalf of numerous clients
over multiple years, as one single, continuing scheme); *United States* v.
*Klat*, 156 F.3d 1258, 1266–67 (D.C. Cir. 1998) (single count charging threats
against public official over six month period was not duplicitous and failure
to give specific unanimity instruction was not plain error); *United States*
v. *Saunders*, 641 F.2d 659, 661–62, 665 (9th Cir. 1980) (single count charging
violation of Mann Act, 18 U.S.C. § 2421 et seq., prohibiting transportation

State *v.* Douglas C.

As has the Second Circuit, those courts of appeals have

of women in interstate commerce for purposes of prostitution, was not duplicitous as continuing course of conduct, without statutory analysis and despite fact that multiple interstate crossings over course of three months could have been charged as separate offenses), cert. denied, 452 U.S. 918, 101 S. Ct. 3055, 69 L. Ed. 2d 422 (1981); *United States* v. *Alsobrook*, 620 F.2d 139, 142 (6th Cir.) ("The determination of whether a group of acts represents a single, continuing scheme or a set of separate and distinct offenses is a difficult one that *must be left at least initially to the discretion of the prosecution.* This discretion, however, is not without limits. . . . Ultimately, the indictment must be measured in terms of whether it exposes the defendant to any of the inherent dangers of a duplicitous indictment." (Citation omitted; emphasis added.)), cert. denied, 449 U.S. 843, 101 S. Ct. 124, 66 L. Ed. 2d 51 (1980); *Cohen* v. *United States*, 378 F.2d 751, 754 (9th Cir.) (concluding, without analysis of statutory language, that, although each violation of 18 U.S.C. § 1084 (a) could have been charged as separate violation, prosecutor was free to charge series of violations as single infraction), cert. denied, 389 U.S. 897, 88 S. Ct. 217, 19 L. Ed. 2d 215 (1967); *United States* v. *Shorter*, 608 F. Supp. 871, 876 (D.D.C. 1985) ("[t]he grand jury, presumably under the guidance of the prosecutor, may charge few or many counts depending [on] a variety of factors, and, [in the absence of] oppression or impermissible duplicity, the decision with respect thereto is *within the realm of grand jury and prosecutorial discretion*" (emphasis added)), aff'd, 809 F.2d 54 (D.C. Cir.), cert. denied, 484 U.S. 817, 108 S. Ct. 71, 98 L. Ed. 2d 35 (1987).

The majority's efforts to distinguish these cases are unpersuasive. I do not dispute that the statutory language can be relevant. My point is simply that the prosecutor has charging discretion when the statute does not expressly prohibit it. Although the majority is correct that these decisions, unlike *Moloney*, do not expressly adopt a general rule regarding course of conduct charging, the fairest reading of these decisions is that they are, in fact, applying the Second Circuit approach. As to the majority's contention that none of these cases so much as mentions a presumption of prosecutorial discretion in these matters, the highlighted language plainly belies that claim.

In support of its contention that the Ninth Circuit follows a different approach than it did in *Cohen*, *Saunders*, and *Denton*, the majority relies on *United States* v. *Newson*, 534 Fed. Appx. 604 (9th Cir. 2013). But *Newson* is a one page, summary affirmance, in which the court merely stated, in dictum, that, "[o]f course, jurors cannot be instructed that a defendant can be convicted of an offense if he committed, for example, crime A or crime B, unless they are also instructed that there must be unanimous agreement on which crime it was." Id., 605. *Newson* says nothing about course of conduct charging, which was not at issue, and certainly does not purport to overturn more than forty years of the Ninth Circuit's duplicity jurisprudence. Likewise, the Seventh Circuit case on which the majority relies, *United States* v. *Fawley*, 137 F.3d 458, 471 (7th Cir. 1998), is readily distinguishable,

345 Conn. 421 JANUARY, 2023 499

State *v.* Douglas C.

applied this approach across a broad range of statutory crimes, including those involving the sexual abuse of young children.[26]

Accordingly, I cannot agree with the majority's statement that, "[w]hen a single count does charge the defendant with having violated a single statute in multiple, separate instances, each of which could establish a separate violation of the statute, federal courts agree that such a count is duplicitous." Part I B of the majority opinion. I cited numerous federal appellate cases, across the circuits, that expressly say the exact opposite.[27]

insofar as the analysis in that case is specific to the law of perjury and relies on *United States* v. *Gipson*, 553 F.2d 453, 458–59 (5th Cir. 1977), which, the majority agrees, does not govern these types of cases.

[26] See, e.g., *Dyer* v. *Farris*, 787 Fed. Appx. 485, 494–95 (10th Cir. 2019) (applying Oklahoma law and holding that charging alleged acts of child sexual abuse committed during six month period as single transaction did not violate clearly established federal law), cert. denied,      U.S.     , 140 S. Ct. 1157, 206 L. Ed. 2d 207 (2020); *Ives* v. *Boone*, 101 Fed. Appx. 274, 294 (10th Cir.) (similar), cert. denied, 543 U.S. 1001, 125 S. Ct. 609, 160 L. Ed. 2d 460 (2004), and cert. denied, 543 U.S. 1026, 125 S. Ct. 669, 160 L. Ed. 2d 505 (2004); *United States* v. *Klade*, Docket No. 95-10213, 1996 WL 115291, *1 (9th Cir. March 14, 1996) (decision without published opinion, 79 F.3d 1155) (rejecting duplicity claim as to alleged violations of 18 U.S.C. § 2241 (c), which prohibits aggravated sexual abuse of children, and explaining that, "[i]n reviewing an indictment for duplicity, our task is not to review the evidence presented at trial to determine whether it would support charging several crimes rather than one, but rather solely to assess whether the indictment itself can be read to charge only one violation to each count" (internal quotation marks omitted)), cert. denied, 519 U.S. 850, 117 S. Ct. 141, 136 L. Ed. 2d 88 (1996).

[27] See, e.g., *United States* v. *Bowser*, Docket No. 96-50889, 1997 WL 802374, *1 (5th Cir. November 19, 1997) (decision without published opinion, 132 F.3d 1454) ("the indictment [was] not duplicitous even though each bad act alone could constitute an offense"); *United States* v. *Berardi*, 675 F.2d 894, 898 (7th Cir. 1982) ("two or more acts, each one of which would constitute an offense standing alone, may be joined in a single count without offending the rule against duplicity"); *United States* v. *Alsobrook*, 620 F.2d 139, 142–43 (6th Cir.) (concluding that indictment was not duplicitous, even though offenses could have been charged separately), cert. denied, 449 U.S. 843, 101 S. Ct. 124, 66 L. Ed. 2d 51 (1980); *Cohen* v. *United States*, 378 F.2d 751, 754 (9th Cir.) (count was not duplicitous, "even though each [infraction] might have been alleged as a separate violation"), cert. denied, 389 U.S. 897, 88 S. Ct. 217, 19 L. Ed. 2d 215 (1967).

State *v.* Douglas C.

Outside of the United States Courts of Appeals for the First, Third, Fifth, and Eleventh Circuits, the majority has not identified one case that broadly and unequivocally adopts its rule that, unless the legislature clearly permits it, a crime that could be charged as individual infractions cannot also be charged, in the alternative, as a continuing course of conduct. Indeed, even among those circuits, whose approach to duplicity most closely approximates that of the majority, some cases take a more flexible approach.[28]

---

I do not disagree that, as a general matter, duplicity is defined as charging multiple offenses in a single count. What I take issue with is the majority's repeated assertion that a majority of the federal courts of appeals have adopted a strict approach to course of conduct charging, making such charging a constitutional violation unless expressly authorized by statute or unless a bill of particulars was filed or the court gave a specific unanimity instruction.

[28] See, e.g., *United States* v. *Prieto*, 812 F.3d 6, 9, 11 (1st Cir.) (rejecting duplicity challenge, without considering statutory language, because government permissibly assumed burden of charging multiple violations of federal mail fraud statute as one unified scheme), cert. denied,    U.S.   , 137 S. Ct. 127, 196 L. Ed. 2d 100 (2016); *United States* v. *Moyer*, 674 F.3d 192, 204–205 (3d Cir.) (when statutory language was silent, count charging falsification of multiple police reports was not duplicitous because "*the government has discretion* to draw [t]he line between multiple offenses and multiple means to the commission of a single continuing offense" (emphasis added; internal quotation marks omitted)), cert. denied, 568 U.S. 846, 133 S. Ct. 165, 184 L. Ed. 2d 82 (2012), and cert. denied sub nom. *Nestor* v. *United States*, 568 U.S. 1143, 133 S. Ct. 979, 184 L. Ed. 2d 760 (2013); *United States* v. *Root*, 585 F.3d 145, 150–53 (3d Cir. 2009) (when statutory language was silent on issue, government has discretion to charge tax evasion covering several years as single course of conduct when underlying basis of indictment is consistent, long-term pattern of criminal conduct); *United States* v. *Baytank (Houston)*, *Inc.*, 934 F.2d 599, 609 (5th Cir. 1991) ("[n]otwithstanding that a defendant's actions, charged in a single count, could have been charged as separate violations, nevertheless a single count may be used [when] those actions represent a single, continuing scheme, provided the indictment (1) notifies the defendant adequately of the charges against him; (2) does not subject the defendant to double jeopardy; (3) does not permit prejudicial evidentiary rulings at trial; and (4) does not allow the defendant to be convicted by a nonunanimous jury verdict" (internal quotation marks omitted)).

The United States Court of Appeals for the Eleventh Circuit, although indicating that it might have followed a different approach as a matter of

State *v.* Douglas C.

## F

The same is true of sister state courts. Although some states have adopted an approach similar to the majority's approach, allowing course of conduct charging for a particular statute only when it is clear that the legislature so intended,[29] others favor the more flexible approach that I have outlined. See, e.g., *Cooksey* v. *State*, 359 Md. 1, 18–19, 752 A.2d 606 (2000) (acknowledging "split of authority" in child sexual abuse context and citing cases).

There is a particular category of criminal cases in which I believe the approach I favor clearly demonstrates its superiority. Those cases involve sexual assault crimes and, more specifically, the repeated sexual abuse of children. Indeed, our sister state courts have been especially receptive to applying the Second Circuit approach when it comes to what the California Supreme Court has dubbed "resident child molester" cases.[30] (Internal quotation marks omitted.) *People* v. *Jones*, 51 Cal. 3d 294, 299, 792 P.2d 643, 270 Cal. Rptr. 611 (1990);[31]

first impression, thought that it was compelled to adhere to Fifth Circuit precedent because of the common lineage of those courts. See *United States* v. *Schlei*, 122 F.3d 944, 979 (11th Cir. 1997) ("Several [federal courts of appeals] have rejected the [Fifth Circuit's] analysis . . . . Although the rationale of [an alternative approach] may be tempting, we are bound by the decision of the former Fifth Circuit . . . ." (Citations omitted; internal quotation marks omitted.)), cert. denied, 523 U.S. 1077, 118 S. Ct. 1523, 140 L. Ed. 2d 674 (1998).

[29] See, e.g., *State* v. *Paulsen*, 143 N.H. 447, 449–51, 726 A.2d 902 (1999); *People* v. *Algarin*, 166 App. Div. 2d 287, 287–88, 560 N.Y.S.2d 771 (1990); *State* v. *Saluter*, 715 A.2d 1250, 1253–55 (R.I. 1998).

[30] The phrase "resident child molester" describes cases in which the perpetrator lives with or has regular access to the child and, thus, is able to repeatedly sexually abuse the victim in such a way that there are unlikely to be third-party witnesses and the child is unlikely to be able to recall the specific dates or details of individual assaults.

[31] In *State* v. *Stephen J. R.*, 309 Conn. 586, 595–601, 72 A.3d 379 (2013), this court cited *Jones* with approval, albeit in the converse context of determining when, and to what extent, generic child abuse testimony can support multiple, independent counts. Although recognizing the need to secure a defendant's due process rights; see id., 595–97; we have repeatedly emphasized

State *v.* Douglas C.

see footnote 32 of this opinion and accompanying text. Prosecutors face a unique challenge when charging a defendant in a case in which the statute at issue uses language that, on its face, envisions individual, discrete sexual violations, but, due to the victim's young age and the often recurring nature of such abuse, the victim can testify only (or primarily) that the defendant abused him or her in a particular way and in a particular location, during a particular span of time, but cannot provide sufficient detail to identify each separate instance of abuse. Although federal cases occasionally address the issue; see footnote 26 of this opinion; most cases alleging sexual abuse of children are prosecuted at the state level. It is to these decisions that we must look for guidance.

Sister state courts have afforded prosecutors broad latitude as to whether to charge the sexual abuse of children as discrete violations or as a course of conduct crime, recognizing the significant challenges involved in bringing resident child molesters to justice.[32] As these

the need for flexibility in light of the unique challenges involved in prosecuting cases of child sexual abuse.

[32] See, e.g., *Dell'Orfano* v. *State*, 616 So. 2d 33, 35 (Fla. 1993) (rejecting bright-line rule in light of state's strong interest in eliminating sexual abuse of children and children's frequent inability to recall details of abuse); *Geiser* v. *State*, 83 So. 3d 834, 835 (Fla. App. 2011) ("in a case of ongoing sexual abuse of a child, [in which] the child is unable to remember the specific dates on which he or she was abused, the allegation that the act occurred on one or more occasions is not, per se, duplicitous" (internal quotation marks omitted)); *State* v. *Generazio*, 691 So. 2d 609, 611 (Fla. App. 1997) ("[w]ith the notable exception of New York, the courts of [other] states have recognized that child molestation is, by its very nature, a continuous course of criminality"); *Commonwealth* v. *King*, 387 Mass. 464, 467–68, 441 N.E.2d 248 (1982) (rejecting duplicity challenge in child sexual abuse case because course of conduct charge was permissible); *Commonwealth* v. *Joyce*, Docket No. 16-P-1531, 2018 WL 3468447, *3 (Mass. App. July 19, 2018) (decision without published opinion, 93 Mass. App. 1120, 107 N.E.3d 1256) (applying *King*), review denied, 482 Mass. 1107, 130 N.E.3d 166 (2019); *State* v. *Altgilbers*, 109 N.M. 453, 465, 786 P.2d 680 (App. 1989) ("courts have deferred to the prosecutor's charging pattern in such circumstances"), cert. denied, 109 N.M. 419, 785 P.2d 1038 (1990); *State* v. *Cruz*, Docket No. A-1-CA-35877, 2019 WL 5095831, *3 (N.M. App. September 30, 2019) (applying

State *v.* Douglas C.

courts have recognized, the state, the victim, and society at large all share a compelling interest in prosecuting an insidious crime—the repeated sexual abuse of young children. It can be nearly impossible, however, to charge and prosecute each individual instance of abuse when a molester has repeatedly assaulted a child, whose account of the abuse may be the only evidence of the crimes. Sister state courts have cautioned, as have we, that a serial abuser should not benefit and escape justice by virtue of having repeatedly and secretly assaulted a young victim who, as the only witness to the abuse, is incapable of testifying as to dates, times, and other distinguishing details of each incident.[33] See, e.g., *State* v. *Stephen J. R.*, 309 Conn. 586, 601, 72 A.3d 379 (2013) ("[t]o require [the complainant], who was approxi-

*Altgilbers*), cert. denied, New Mexico Supreme Court, Docket No. S-1-SC-37991 (December 12, 2019); see also, e.g., *State* v. *Hoban*, 738 S.W.2d 536, 541 (Mo. App. 1987) ("[l]eeway is necessary in charging sexual abuse and sexual intercourse with minors because children who are the victims of abuse may find it difficult to recall precisely the dates of offenses against them months or even years after the offense has occurred"); *Huddleston* v. *State*, 695 P.2d 8, 10–11 (Okla. Crim. App. 1985) ("when a child of tender years is under the exclusive domination of one parent for a definite and certain period of time and submits to sexual acts at that parent's demand, the separate acts of abuse become one transaction"); *State* v. *Petrich*, 101 Wn. 2d 566, 572, 683 P.2d 173 (1984) (giving prosecutor discretion as to whether to charge individual instances or course of conduct in incest cases but requiring specific unanimity instruction), overruled in part on other grounds by *State* v. *Kitchen*, 110 Wn. 2d 403, 756 P.2d 105 (1988); *State* v. *Lomagro*, 113 Wis. 2d 582, 589, 335 N.W.2d 583 (1983) ("[w]e . . . adopt [the] flexible rule that it is initially up to the state to determine the appropriate charging unit for a particular criminal episode").

[33] See, e.g., *People* v. *Jones*, supra, 51 Cal. 3d 305 ("any constitutional principles or evidentiary standards we develop should attempt to [ensure] that the resident child molester is not immunized from substantial criminal liability merely because he has repeatedly molested his victim over an extended period of time"); *State* v. *Cruz*, Docket No. A-1-CA-35877, 2019 WL 5095831, *2 (N.M. App. September 30, 2019) ("[Y]oung children cannot be held to an adult's ability to comprehend and recall dates and other specifics. The predictable limitations of young witnesses should not be turned into a reason to prevent prosecution of their abusers." (Internal quotation marks omitted.)), cert. denied, New Mexico Supreme Court, Docket No. S-1-SC-37991 (December 12, 2019).

State *v.* Douglas C.

mately seven years old at the time of the abuse, to recall specific dates or additional distinguishing features of each incident would unfairly favor the defendant for the commission of repetitive crimes against a child victim''). These courts thus afford prosecutors broad discretion to decide whether course of conduct charging is appropriate.[34] I fear that the approach the majority takes today does exactly that which this court, and other state courts, has cautioned against, by requiring a child who has been repeatedly sexually assaulted to clearly delineate multiple instances of abuse and to recall each with specificity.

None of the state cases cited in footnote 32 of this opinion was decided on the basis of a close parsing of the statutory language, and none purported to permit course of conduct charging as a matter of express legislative intent. Rather, the courts simply considered, on a case-by-case basis, whether such charging comports with the constitutional and policy considerations that underlie the doctrine of duplicity.

In short, in my view, the rule that the majority adopts hamstrings prosecutors, potentially leaving victims, and, most especially, victims of resident child molesters, without recourse. It places additional, unnecessary burdens on the legislature, to amend each statute to

___

[34] See, e.g., *State* v. *Generazio*, 691 So. 2d 609, 611 (Fla. App. 1997) (''other state courts . . . have allowed the matter of how to charge these sensitive and [difficult to define] acts of sexual abuse to rest in the discretion of prosecutors''); *State* v. *Altgilbers*, 109 N.M. 453, 465, 786 P.2d 680 (App. 1989) (''[c]ourts almost uniformly grant prosecutors discretion in how they frame the charges [of sexual misconduct against children]''), cert. denied, 109 N.M. 419, 785 P.2d 1038 (1990).

Although the majority is correct that whatever rules we adopt will potentially apply to most crimes, the practical reality is that the scope of the continuing offense doctrine is most frequently implicated, and most hotly debated, in cases that involve child sexual abuse. As a practical matter, regardless of which approach we adopt, course of conduct charging will not be appropriate for the vast majority of criminal prosecutions.

State *v.* Douglas C.

expressly authorize course of conduct charging, and on our trial courts, to manage unnecessarily complex trials involving, potentially, dozens of similar charges against the same defendant. And it does as much to penalize as to protect criminal defendants, by requiring multicount charging in legitimate course of conduct cases.

II

An additional flaw in the majority's approach, I believe, is that it is deceptively difficult to apply. One might think the opposite would be true. A framework providing that course of conduct charging is always permissible when expressly approved by the legislature and always impermissible when not expressly approved by the legislature would seem to boast an enviable simplicity, if nothing else. In reality, however, except for the small number of statutes for which the legislature has clearly evidenced its intention one way or the other, parsing whether each of the countless facially silent statutes contemplates course of conduct charging proves to be an exercise in subjectivity, if not futility. The present appeal is a case in point.[35]

Section 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ." The majority readily acknowledges that there is nothing in the plain language of § 53-21 (a) (2) that addresses the issue of duplicity

---

[35] As I demonstrate in my concurring and dissenting opinion in the companion case, *State* v. *Joseph V.*, supra, 345 Conn. 581–89 (*Mullins, J.*, concurring in part and dissenting in part), the flaw latent in the majority's approach comes into sharper contrast when we compare the disparate treatment that fundamentally comparable statutes—such as child sexual assault and risk of injury—receive under that duplicity framework.

State *v.* Douglas C.

or course of conduct charging. Moreover, it is well established that each instance of improper intimate contact can be charged as a discrete crime under § 53-21.[36] The majority concedes as much.

Because the statute does not facially authorize course of conduct charging, I turn to the statutory history for insight into legislative intent on whether such charging is permissible. I do not read the majority's opinion to have identified any statements in the legislative history that specifically indicate that the legislature intended § 53-21 (a) (2) to be chargeable as a continuing course of conduct crime. My own review of the history also has not revealed any statements directed to the course of conduct issue. Rather, I understand the majority simply to be stating that *this court* already had interpreted an earlier version of the risk of injury statute to permit charging a continuing course of conduct, and that there is no indication that the legislature, when it amended the statute in 1995 to add the language that now appears in subsection (a) (2); see Public Acts 1995, No. 95-142, § 1 (P.A. 95-142); intended to change that interpretation. The majority states that, although "[i]t is not clear from the plain language of § 53-21 (a) (2) [whether] multiple, separate instances of conduct" can be charged as a continuing offense, "[i]n case law prior to the 1995 amendment . . . this court held that risk of injury to a child may be charged under a continuing course of conduct theory." (Citation omitted.) Part II of the majority opinion. The majority then states that the 1995 amendment "maintained" and "manifestly [did not] alter"

---

[36] See, e.g., *State* v. *Kulmac*, 230 Conn. 43, 68–69, 644 A.2d 887 (1994) ("Each separate act of . . . risk of injury constituted a separate offense. . . . Each act can constitutionally support a separate conviction for risk of injury." (Citations omitted; footnote omitted.)); *State* v. *Snook*, 210 Conn. 244, 261–62, 555 A.2d 390 (rejecting argument that § 53-21, as charged, proscribed continuing course of conduct such that each separate act could not be charged as separate violation), cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989).

State *v.* Douglas C.

our prior interpretations of the statute—when subsection (a) (2) did not exist—and that "[t]here is no indication that the legislature sought to alter the substance of the crime." Id. So, the issue, ultimately, is one of legislative acquiescence.

In this case, however, there are two reasons why the legislative acquiescence argument is particularly unpersuasive. First, if there was legislative acquiescence in this case, it ratified my approach to the law of duplicity, rather than that of the majority. When we initially held that risk of injury can be charged as a course of conduct, we did not reach that conclusion as a matter of statutory interpretation; nor did we purport to divine the intent of the legislature. This is a key point.

The case in which this court first recognized that a version of the risk of injury statute prior to the 1995 amendment could be charged as a continuing course of conduct crime was *State* v. *Hauck*, 172 Conn. 140, 374 A.2d 150 (1976). The defendant in that case, a middle school teacher, challenged the trial court's denial of his motion for a supplemental bill of particulars when the state charged him with violating General Statutes (Rev. to 1972) § 53-21 by forcing a student to pose nude for him on a regular, sometimes weekly, basis "on or about divers dates" between November 11, 1971, and June, 1972. (Internal quotation marks omitted.) Id., 150; see also id., 141–42. This court concluded, in affirming the conviction, that "[t]he offenses charged . . . were obviously of a continuing nature"; id., 150; and its analysis made no reference whatsoever to the statutory language, the legislative history of the statute, or any other indicia of legislative intent. Rather, in deferring to the trial court's discretion in allowing course of conduct charging, this court relied on purely practical considerations: that the charges were "clearly reasonable" in light of the trial testimony and that "it would have been virtually impossible to provide the many specific dates

State *v.* Douglas C.

[on] which the acts constituting the offenses occurred.''[37] Id., 150–51; see also *State* v. *Spigarolo*, 210 Conn. 359, 391, 556 A.2d 112 (reiterating pragmatic holding of *Hauck*), cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). If the legislature has, in the intervening years, placed its imprimatur on *Hauck*, as the majority suggests, then it has endorsed not a statutory analysis of the meaning of § 53-21—*Hauck* and the other appellate cases that were decided prior to the 1995 amendment offered no such analysis[38]—but, rather, the very framework that I am supporting, under which the state has the discretion to charge a course of conduct when appropriate.

Second, because legislators emphasized, in 1995, that the new language of P.A. 95-142, § 1, which now appears in subsection (a) (2) of § 53-21, defined a "new" crime; 38 S. Proc., Pt. 5, 1995 Sess., pp. 1766, 1777, remarks of Senator Thomas F. Upson; the legislative history

---

[37] The court also cited the general principle that, when "time is not of the essence or gist of the offense, the precise time at which it is charged to have been committed is not material." *State* v. *Hauck*, supra, 172 Conn. 150.

[38] The majority addresses *Hauck* in a footnote, contending that, "to the extent *Hauck* was ambiguous regarding its reliance on the language of the statute," cases decided decades later clarified that, in *Hauck*, we were really relying on the "situation" language in the statute. (Internal quotation marks omitted.) Footnote 26 of the majority opinion. I disagree. First, we were not "ambiguous" in *Hauck*; surely, the fact that we never mentioned the language of the statute, and instead provided policy rationales in support of our decision, is good evidence that *Hauck* was not a statutory interpretation case. Second, there is no suggestion in *Hauck* that the defendant was prosecuted for placing the victim in a dangerous situation, rather than for subjecting her to sexual acts likely to impair her morals. Indeed, the word "situation" appears nowhere in the decision. Third, the majority's suggestion that *Hauck*'s successor cases, such as *Spigarolo*, approved course of conduct charging on the basis of the "situation" language in § 53-21 is misleading. As in *Hauck*, this court relied not on that statutory language but on practical considerations; see, e.g., *State* v. *Spigarolo*, supra, 210 Conn. 391 ("[b]ecause the state was unable to specify with greater precision the times of the alleged incidents, it necessarily proceeded under a theory that the defendant's conduct was in the nature of a continuing offense"); as well on the conceptual distinctness principles that the majority repudiates. See, e.g., id., 391–92.

State *v.* Douglas C.

itself contradicts the majority's position. Prior to the 1995 amendment, General Statutes (Rev. to 1995) § 53-21 provided: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be *placed in such a situation* that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, *or does any act* likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both." (Emphasis added.) In the legislative history of the 1995 amendment, one of the bill's authors stated that the new language prohibiting intimate contact with a child under the age of sixteen years defined a "new" risk of injury crime. 38 S. Proc., supra, pp. 1766, 1777, remarks of Senator Upson. So, there is no reason to think that the legislature intended prior judicial interpretations of the old § 53-21, the first part of which (the situation portion) may have authorized course of conduct charging, to apply to the newly added provision.[39] For these reasons,

---

[39] The majority relies on language in the legislative history reflecting the fact that, prior to the 1995 amendment of § 53-21, that statute, which prohibited both *acts* likely to impair the health or morals of children and the placing of children in dangerous or unwholesome *situations*, did not distinguish between sexual and nonsexual risk of injury. Legislators divided the statute into sexual and nonsexual parts at that time, so that individuals convicted of inappropriate sexual contact with children could be subjected to mandatory minimum sentences and sex offender registration requirements. All this is true. But it provides little support for the majority's position. The bill's sponsor indicated that the legislature was not merely separating out sexual from nonsexual harms to children but was making a "change in the definition of risk of injury . . . so that the offense can be more carefully delineated." 38 S. Proc., supra, pp. 1769–70, remarks of Senator Martin M. Looney. In addition, unlike the original statute, which is now subsection (a) (1), the sexual misconduct component of the statute, subsection (a) (2), makes no mention of situations, only of specific acts. The fact that the legislature expressly prohibited both dangerous situations and inappropriate acts in subsection (a) (1), but only inappropriate sexual acts in subsection (a) (2), cannot have been accidental. See, e.g., *Rutter* v. *Janis*, 334 Conn. 722, 739, 224 A.3d 525 (2020).

To be clear, I agree with the majority that course of conduct charging is permissible under § 53-21 (a) (2). I just do not perceive anything in the plain

State *v.* Douglas C.

I do not find the majority's duplicity analysis to be persuasive.

## III

In the present case, the application of the approach that I favor reaches the same result as does the application of the majority's approach but, I think, in a way that more directly considers and accounts for the various practical and constitutional interests at stake. To review, in multiple instances cases, I would adopt a framework for evaluating duplicity related challenges by which (1) unless the legislature specifies otherwise, the prosecutor has the discretion to charge a pattern of many similar infractions as a single scheme or as a course of criminal conduct, (2) the trial court should not permit course of conduct charging if such charging would be unreasonable or unfair under the circumstances or would violate the defendant's fifth or sixth amendment (or other constitutional) rights, and (3) if an appellate court, on review, concludes that the trial court should not have permitted course of conduct charging, either because the defendant's conduct cannot fairly be characterized as a single scheme or pattern, or because the constitutional considerations that underlie the rule against duplicity are implicated, then the trial court's determination is subject to harmless error analysis.[40]

language of the statute or the legislative history that resolves, or even contemplates, the issue, one way or the other. I conclude that, as with most criminal statutes that are silent on this issue, the legislature has left the charging of these crimes to the discretion of the prosecutor, subject always to judicial supervision.

[40] See, e.g., *United States* v. *Webster*, 231 Fed. Appx. 606, 607 (9th Cir. 2007) (even if it was assumed, arguendo, that failure to give specific unanimity instruction was error in view of specific facts of case, error was harmless because evidence of guilt was overwhelming).

Note that, even when course of conduct charging is unsuitable, I would conclude that duplicitous charging represents a violation of the rules of criminal procedure and not a per se constitutional violation. In practice, however, in most cases in which the multiple violations charged in one count cannot reasonably be characterized as part of a single scheme or plan, the defendant's sixth amendment rights will be violated in the absence

State *v.* Douglas C.

Application of this framework to the present case is a relatively straightforward matter. First, with respect to the plain language of the statute, I agree with the majority that the plain language of § 53-21 (a) (2) "does not appear to clarify whether the statute criminalizes a continuing course of conduct or limits its scope to a single occurrence."[41] Part II of the majority opinion. In addition, as I discussed in part II of this opinion, nothing in the legislative history suggests that the legislature resolved—or considered—the course of conduct question one way or the other when drafting the statute. Course of conduct charging is, therefore, left to the discretion of the prosecutor.

Second, I have little trouble concluding that the victims' allegations in the present case reasonably can be characterized as an ongoing pattern or scheme of misconduct, such that course of conduct charging was a reasonable and proper exercise of prosecutorial discretion. Both N and T, for example, alleged that the defendant touched their breasts on a regular basis, between 2005 and 2007, at his residence in Lisbon. They did not report the abuse until years later, though, and, with a few notable exceptions, they could not recall the specific dates or other details of the abuse.

Third, and most important for present purposes, is the question of whether charging the defendant's various abuses of each victim as a course of conduct violated his sixth amendment right to a unanimous jury verdict. The defendant contends that, insofar as the victims

of a specific unanimity instruction or election by the state to proceed only on one allegation.

[41] Compare statutes in which a legislature *expressly* authorizes course of conduct charging, such as § 53a-181d (b), which provides in relevant part: "A person is guilty of stalking in the second degree when:

"(1) Such person knowingly engages in a course of conduct directed at or concerning a specific person . . . ."

Section 53a-181d (a) (1) provides in relevant part that " '[c]ourse of conduct' means two or more acts . . . ."

State *v.* Douglas C.

identified in counts one (N) and six (T) offered both
generic testimony as to repeated improper contact, such
as breast touching, as well as more detailed accounts
of some specific incidents of abuse, it is impossible to
know whether the jury unanimously agreed that he
committed any one particular act of risk of injury
against each victim.[42]

As I previously discussed, the Second Circuit has long
held that the sixth amendment right to a unanimous jury
verdict is not implicated when a crime is properly
charged as a course of conduct. The principal rationale
for this rule is that the crime with which the defendant
is being charged in these cases is, in essence, the course
of conduct itself. See, e.g., *State* v. *Hauck*, supra, 172
Conn. 151 (series of acts committed during seven month
period, considered "in toto," constituted risk of injury).

As I noted, however, this principle applies only when
the essence of the charged wrongdoing can fairly be
said to be a scheme or course of criminal conduct. In
the present case, I have no difficulty concluding that
the misconduct alleged in counts one and six was well
suited to course of conduct charging. Each count
charged that a single individual, the defendant, abused
a single victim. Both victims primarily testified to a
pattern of undifferentiated conduct—unwanted touch-
ing of their breasts—which they said occurred numer-
ous times and on a regular basis, over the course of
years, when they were visiting the defendant's home in
Lisbon. There is no suggestion in the record that any

---

[42] S, the victim of the charges in count five, claimed only that the defendant
touched her inappropriately in a series of interactions on one summer
evening after her eighth grade year. I agree with the majority that there is
no unanimity problem with respect to count five because, among other
things, the jury reasonably could have found that the testimony related to
one ongoing incident of abuse. See, e.g., *Steele* v. *State*, 523 S.W.2d 685, 687
(Tex. Crim. App. 1975); *State* v. *Lomagro*, 113 Wis. 2d 582, 594–95, 598, 335
N.W.2d 583 (1983).

State *v.* Douglas C.

of the individual assaults were inspired by anything other than the lecherous motives that one might expect, and the victims' testimony that the defendant and his wife expressed regular appreciation for their breasts suggests that the misconduct reasonably can be characterized as part of an ongoing pattern or scheme. The primary evidence for both the specific incidents and the general course of conduct alleged was simply the victims' own testimony, and the defenses offered were equally generic. Although defense counsel cross-examined the victims regarding some of the specific details of the incidents that they described, the defense as to each of those incidents—as well as to all of the generic abuse testimony—was the same: a blanket denial of the accusations, an attack on the victims' credibility, and a theory that the victims had fabricated their stories to retaliate, after a family squabble.

In addition, the sexual abuse of children is a crime that is commonly understood to occur on an ongoing, repetitive basis, and there is compelling reason to afford prosecutors discretion to charge such offenses as courses of conduct. Cases that involve the sexual abuse of children, regardless of whether the complainants in those cases give only generic testimony or also describe a few particular incidents in addition to a generic pattern of abuse, typically turn on the general credibility of the complainants, any other witnesses, and, if they choose to testify, the defendants. To apply strict specific unanimity requirements in such cases would place an unwarranted burden on young victims of sexual assault, essentially penalizing them for providing whatever limited, specific details they might be able to recall to corroborate their stories. For this reason, as the United States Supreme Court explained in *Richardson* v. *United States*, 526 U.S. 813, 119 S. Ct. 1707, 143 L. Ed. 2d 985 (1999), "[s]tate courts interpreting [sexual abuse of a minor] statutes have sometimes permitted jury

State *v.* Douglas C.

disagreement about a specific underlying criminal incident insisting only [on] proof of a continuous course of conduct in violation of the law. . . . The state practice may well respond to special difficulties of proving individual underlying criminal acts . . . ."[43] (Citations omitted; internal quotation marks omitted.) Id., 821. That is to say, courts have been loath to force young victims of sexual abuse to choose between either (1) testifying as to each individual incident of abuse with sufficient precision to allow the state to prove it beyond a reasonable doubt or (2) confining their testimony entirely to generic assertions and suppressing any supporting details that they are able to recall. For these reasons, I do not believe that the trial court abused its discretion in permitting the state to charge all of the alleged incidents of inappropriate conduct against N and T in counts one and six, respectively.

Fourth, there is no plausible claim—and the defendant does not contend—that the defendant's due process rights were violated when the state charged his alleged assaults on each victim as one course of conduct. The defendant received adequate notice of the crimes charged, as the state's long form substitute information identified each victim by her initials and her date of birth and accused the defendant of violating § 53-21 (a) (2), at his home in Lisbon, beginning "in or about 2005" and continuing through various dates between 2006 and 2010, depending on when each victim reached the age of sixteen. Nothing more was required. Nor did the charges compromise the defendant's ability to present a defense, as in cases in which a defendant claims to have a partial alibi or when the charged conduct would not have constituted a crime during some

---

[43] Although the sixth amendment right to a unanimous jury was not yet fully incorporated when *Richardson* was decided, the federal courts have not questioned this analysis in the wake of *Ramos* v. *Louisiana*, U.S. , 140 S. Ct. 1390, 1397, 206 L. Ed. 2d 583 (2020).

State *v.* Douglas C.

portion of the alleged course of conduct. In the present case, the defendant readily conceded that he was regularly present with the victims at his Lisbon home during the years in question; his defense was that the victims' accusations were simply false. Finally, there is no double jeopardy problem with course of conduct charging because the defendant cannot subsequently be retried for any similar conduct that occurred during the time period at issue. Accordingly, I agree with the majority's ultimate conclusion that the defendant's conviction should be upheld.

IV

For all of the foregoing reasons, I believe that the present case is a quintessential example of why prosecutors must be given the discretion to charge the ongoing sexual abuse of young children as a single course of conduct. Permitting such charging, when fair and appropriate, respects the broad authority traditionally conferred on prosecutors to levy the appropriate charges, according to the circumstances of each case. It ensures that young, repeat victims of these heinous crimes can have their day in court and not be shut out because they cannot recall, with specificity, particular incidents from among an ongoing pattern of repeated abuse. But, importantly, my view considers the interests of defendants as well, avoiding needless repetitive charging, limiting the maximum jail time and criminal jeopardy to which defendants are exposed, and recognizing that defendants' sixth amendment rights must be considered even when course of conduct charging is appropriate. For these reasons, I respectfully concur in the judgment.